**UNITED STATES, Appellee,**

v.

**Frank PORTER, Jr., Defendant, Appellant.**

**No. 90–1191.**

United States Court of Appeals, First Circuit.

Heard Nov. 9, 1990.

Decided Jan. 30, 1991.

---

Murray A. Kohn, by appointment of the Court, with whom Espinosa & Associates, was on brief for defendant, appellant.

Victor A. Wild, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief for appellee.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and CAFFREY,** Senior District Judge.

BREYER, *Chief Judge.*

Frank Porter appeals his conviction for robbing five banks. *See* 18 U.S.C. § 2113(a). We affirm his conviction. We shall explain why by discussing briefly each of his several claims.

1. *Photo identification.*

■ The strongest evidence against Porter consisted of the testimony of six eye witnesses, who identified him, in court, as the robber. Porter argues that the court should have suppressed that testimony because it rested upon previous photo identifications that were 1) "impermissibly suggestive" and 2) created "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). In support he says that FBI agent Jan Galbreath, when showing a photo array before trial to one of the witnesses, Nathaniel Hefferman, told Hefferman that he "would need to make an identification"

---

* Of the Fifth Circuit, sitting by designation.
** Of the District of Massachusetts, sitting by des-   ignation.

and that he "may be called upon to testify." He also says that Hefferman wrote his initials on the back of his (Porter's) photo, thereby suggesting to later viewers that Porter was the robber.

The problem with these arguments is that the record indicates that Galbreath's statement meant no more than what it said, namely that Hefferman would have to identify the robber and that he might have to testify. We do not believe that this statement was impermissibly suggestive. Nor was there any "likelihood of irreparable misidentification," let alone a "very substantial" one. Hefferman was absolutely certain about his identification which he made within ten days of the robbery, he had adequate time to observe the robber, and he said he had deliberately paid close attention to the robber's features when the robbery took place. *See United States v. Bouthot*, 878 F.2d 1506, 1514 (1st Cir.1989); *Judd v. Vose*, 813 F.2d 494, 498 (1st Cir. 1987). Since the record shows—without contradiction—that Hefferman was the last testifying eye witness to see the photo array, his initials (assuming for argument's sake that they were placed on the photo) were not suggestive. Porter's remaining arguments on this point, phrased in general terms, are unconvincing.

### 2. *Ineffective assistance of counsel.*

▮ Porter argues that his trial counsel was ineffective. That is to say, in Porter's view, his attorney's performance 1) "fell below an objective standard of reasonableness," and 2) deprived him "of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). After reviewing the record, we can find no such deficiencies.

a. Porter says counsel failed to investigate and interview government and other witnesses to the robberies. With one exception, however, he does not try to show how any such failure deprived him of a "viable defense." *United States v. Oliveras*, 717 F.2d 1, 4 (1st Cir.1983) (appellant must show that counsel overlooked some "viable defenses"); *United States v.*

*Green*, 882 F.2d 999, 1003 (5th Cir.1989) ("A defendant who alleges failure to investigate ... must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). That exception consists of his specific claim that one of the witnesses, Patrick Bastien, identified someone else as the robber. The record, however, shows that Bastien made *no* identification, not that he identified someone else as the robber. We can find no particular reason to believe that further investigation would have helped Porter.

b. Porter says that counsel should have called Bastien as an exculpatory witness. Since counsel might have worried, however, that Bastien, if called, would have said Porter was the robber, counsel's decision not to call him falls well within the scope of "informed professional judgment." *Shraiar v. United States*, 736 F.2d 817, 818 (1st Cir.1984).

c. Porter says that counsel should have moved to suppress the sweater he was carrying when he was arrested. He says the sweater (which witnesses said looked like the robber's sweater) helped convict him. But, since the officers had probable cause to arrest Porter, we are not aware of, and Porter has not pointed us to, any argument for suppression that stood a reasonable chance of success. Counsel need not make meritless arguments. *See Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990); *United States v. Caggiano*, 899 F.2d 99, 104 (1st Cir.1990).

d. Porter says that counsel should not have asked FBI agent Galbreath a question that led her to respond that she obtained the photo-array photographs (including one of Porter) from the police department. In Porter's view the answer, by implication, told the jury he had a criminal record. This answer did not directly tell this to the jury, which might have thought that the police had taken the photo when Porter was arrested, or that the police kept numerous photos from many sources for photo-array purposes. Regardless, the asking of the question, taken together with the answer, did not "deprive the defendant of a

fair trial." *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064.

e. Porter says that his counsel's closing argument was substandard, particularly because he failed to catalogue various inconsistencies in the witnesses' descriptions of the robber. The record shows, however, that six witnesses made positive, unequivocal identifications of Porter from the photos and also identified him in court before the jury. Given the strength of their testimony, counsel's decision not to review that testimony once again before the jury represents a reasonable exercise of professional judgment. *See Darden v. Wainwright*, 477 U.S. 168, 186–87, 106 S.Ct. 2464, 2474–75, 91 L.Ed.2d 144 (1986).

f. Porter says that he and trial counsel had a conflict of personalities, which fact deprived him of effective assistance of counsel. Moreover, he says, in light of the conflict, the district court should have assigned him new counsel. The law is clear, however, that a criminal defendant's loss of confidence in his counsel does not, in and of itself, require the court to assign a new one. *See Tuitt v. Fair*, 822 F.2d 166, 173 (1st Cir.), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987) ("[A] defendant's own loss of confidence in his attorney [is] an insufficient reason to delay trial in order to substitute counsel."); *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982) ("a defendant must … afford the court with legitimate reasons for the lack of confidence … [or] the defendant would be entitled to demand a reassignment of counsel simply on the basis of a 'breakdown in communication' which he himself induced"). Nor does a personality conflict, in and of itself, show ineffective assistance. The legal question of "ineffective assistance" focuses, not upon client expressions of satisfaction or confidence, but upon counsel's performance. *See United States v. Cronic*, 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 2046 n. 21, 80 L.Ed.2d 657 (1984) ("the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such"). We find that counsel's performance was perfectly adequate.

Moreover, the district court made more than the requisite effort to help Porter obtain counsel that would please him and to make certain that his rights would receive proper protection.

3. *Speedy trial.*

■ In addition to the federal charges here at issue, Porter faced state charges for robbing three banks. Pending trial on those charges, the state held Porter in a state jail, the Salem House of Correction. Between the time the state police arrested him on state charges and his *federal* indictment, eight months elapsed. Porter says that the federal government should have indicted him sooner, and that its failure to do so violated the federal Constitution. *See United States v. Marler*, 756 F.2d 206, 213 (1st Cir.1985).

To prevail, Porter must show 1) that the "delay in indictment caused him actual prejudice," and 2) that the "delay was undertaken by the government solely to gain tactical advantage over the accused." *Id.; accord United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). We can find no significant prejudice. Porter says that the delay may have led to witness memory loss. But, under the circumstances, we do not see how foggy memories could have worked against him. Regardless, there is no significant evidence that the government delayed solely to gain tactical advantage.

4. *Pre-trial detention.*

■ Porter says that the courts have found that conditions at the Salem state jail violated the federal constitution in that cells were overcrowded and there were inadequate bathroom facilities. Indeed, all federal prisoners were removed from the jail in late 1988. Because Porter was held pending disposition of state charges, he was not removed. Porter argues that holding him, in these circumstances, in the *state* jail, pending disposition of *state* charges, warrants dismissing the separate *federal* charges as some kind of sanction. We are aware of no legal authority that

would require our doing so; and, we conclude, in these circumstances, that dismissal of federal charges is not appropriate.

5. *Sentencing.*

 Porter makes two arguments related to sentencing.

a. Porter argues that the judge, when sentencing him, should have departed downward from the United States Sentencing Guidelines recommended sentence in order to reflect the fact that he had suffered a pre-trial confinement (at the Salem jail) under unconstitutional conditions. We have held that absent extraordinary circumstances, we will not review a district court's decision not to depart from a Guideline sentence. *See United States v. Ruiz,* 905 F.2d 499, 508–09 (1st Cir.1990); *United States v. LaGuardia,* 902 F.2d 1010, 1012–13 (1st Cir.1990). We see no such circumstances here.

b. The district court departed upward from the U.S.S.G. recommended sentence, requiring Porter to serve an additional two months in prison, because it found that Porter had urged his son to rob another bank to obtain money for his (Porter's) bail. Porter, pointing out that the government, by offering immunity, put pressure upon his son to testify, argues that the evidence was insufficient to support the finding. The testimony was corroborated, however, by a letter Porter sent another son. Regardless, the issue is one of credibility and the district court, acting as factfinder, has the legal power to accept the son's testimony as true. *See United States v. Bradley,* 917 F.2d 601, 605 (1st Cir.1990); *United States v. Jimenez–Otero,* 898 F.2d 813, 814–15 (1st Cir.1990). That being so, the evidence was more than sufficient to support the factual finding, *see United States v. Blanco,* 888 F.2d 907, 909 (1st Cir.1989) (preponderance of the evidence standard applies to sentencing phase), and the factual finding provided a perfectly adequate justification for an upward departure. *See* 18 U.S.C. § 3553(a), (b); U.S.S.G. § 5k2.0 p.s.; *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)

(upward departures upheld where circumstances justify a departure, district court's conclusion that such circumstances exist was not clearly erroneous, and the degree of departure was reasonable).

Appellate counsel has thoroughly presented the arguments on behalf of Porter. We find that those arguments are not legally sufficient to warrant a new trial or resentencing. The judgment of the district court is

*Affirmed.*