**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Miriam LEDESMA, aka Mildred
Edmonds, Defendant–
Appellant.**

**No. 90–9111.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 21, 1992.

---

Steven H. Sadow, Atlanta, Ga., for defendant-appellant.

James T. Martin, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, and FAY and COX, Circuit Judges.

FAY, Circuit Judge:

Defendant Miriam Ledesma appeals her sentence of 324 months imprisonment and five years supervised release for conspiracy to manufacture, distribute, and possess cocaine base with intent to distribute, in violation of 21 U.S.C. § 846. To impose this sentence, the district judge departed upward from the applicable United States Sentencing Guideline range on two grounds. First, the judge departed upward one offense level because he found that defendant Ledesma's adjusted offense level did not adequately represent the extent of her criminal activity. Second, the judge departed upward two offense levels because he found that Ledesma had abused a position of trust by involving her daughter in the drug trade.

We affirm both grounds for departure because they are supported by the trial judge's proper consideration of the facts before him. However, we conclude that an upward departure for criminal activity not adequately represented by the defendant's adjusted offense level may not be predicated on evidence of the same transactions or events used to determine that offense level.

I. BACKGROUND

Miriam Ledesma, her daughter Danielle Billings, and four other defendants were charged in a six count indictment with conspiring to manufacture, distribute, and possess with intent to distribute cocaine base and cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Pursuant to a plea agreement, Ledesma pleaded guilty to one count of conspiracy and agreed to testify at the separate trial of one of her alleged co-conspirators. In return, the government dropped the other charges against Ledesma and agreed that any information she divulged under the agreement would not be used against her in sentencing or

any future prosecutions.[1]

On November 16, 1990, the district judge sentenced Ledesma to 324 months imprisonment, followed by five years supervised release, for the one count to which she pleaded guilty. As required by sentencing guideline § 2D1.1,[2] the judge determined Ledesma's base offense level according to the quantity of cocaine involved in the conspiracy. The judge heard evidence at the sentencing hearing that Ledesma had trafficked in 179 kilograms of cocaine. However, he removed 120 kilos from the calculation because the evidence of that amount had come from Ledesma's testimony under her plea agreement. The judge then considered evidence of an uncompleted transaction negotiated between Ledesma's co-conspirator, Haran Griffin, and an undercover agent. The agent claimed that Griffin agreed to buy approximately 20 kilos of cocaine on behalf of Ledesma and other unnamed individuals. Specifically, Griffin agreed to buy 1 kilo at first and, if satisfied with the product, "the sky is the limit." (R8–45). Griffin actually bought 1 kilo from the agent, but never consummated the rest of the proposed deal. The district judge found this evidence insufficient to attribute the full 20 kilograms under negotiation to Ledesma. Therefore, he credited her with only the 1 kilo that co-conspirator Griffin actually purchased, and deducted the other 19 kilos from Ledesma's original total of 179 kilos.

After deducting a total of 139 kilos from the original amount of 179 kilos, the judge predicated Ledesma's base offense level on 40 kilos of cocaine. The Drug Quantity Table designates base offense level 34 for trafficking in 40 kilos of cocaine. U.S.S.G. § 2D1.1(c). The district judge then adjusted this offense level, adding two points for possession of firearms during the commission of the offense,[3] adding two points for Ledesma's managerial role in the criminal activity,[4] and subtracting two points for Ledesma's acceptance of personal responsibility for her criminal conduct.[5] Thus, Ledesma's adjusted offense level was 36.

The appropriate sentencing guideline range for this offense level and Ledesma's category III criminal history was 235–293 months imprisonment. However, the district judge departed upward from this range. First, he added one point to Ledesma's adjusted offense level because he found that, being predicated on only 40 kilos of cocaine, it underrepresented the extent of her criminal activity. The district judge made a factual finding that the evidence

> shows that Mrs. Ledesma was not just dealing [a co-defendant's] dope and not just on the few occasions that the FBI or the Atlanta police happened to make a buy. If I have ever seen a case in this Court that would suggest that she is ... open for [drug dealing] business at least

1. Specifically, the plea agreement provided that "[t]he provisions of § 1B1.8 of the sentencing guidelines ... apply to such information as the defendant may furnish under this agreement." Section 1B1.8(a) states that

 [w]here the defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

 United States Sentencing Commission, *Guidelines Manual*, § 1B1.8 (Nov. 1990).

2. Section 2D1.1 actually is the applicable guideline for "Unlawful Manufacturing, Importing, Exporting, or Trafficking," not the conspiracy to

which Ledesma pleaded guilty. However, 21 U.S.C. § 846 provides that the penalties for conspiring to traffic in narcotics shall be the same as those for actually trafficking in narcotics. 21 U.S.C. § 846 (1988). Therefore, when Ledesma pleaded guilty to the conspiracy charge, she became subject to the penalties specified in the Drug Quantity Table of § 2D1.1(c). *See* U.S.S.G. § 2D1.1(a)(3). This table specifies base offense levels ranging from six to forty-two, depending on the amount and identity of the controlled substance(s) involved in the offense.

3. The judge made this adjustment pursuant to U.S.S.G. § 2D1.1(b)(1).

4. The judge made this adjustment pursuant to U.S.S.G. § 3B1.1(c).

5. The judge made this adjustment pursuant to U.S.S.G. § 3E1.1(a).

five, if not seven days a week 24 hours a day for the period discussed in the presentence report, this is the case.... (R8–94). The judge expressly disclaimed any reliance on information that Ledesma divulged under the plea agreement; instead, he relied on "the circumstantial evidence of the continuum and regularity and quantity of dealing." (R8–90).

Second, the judge added two more points to the adjusted offense level because Ledesma had involved her young adult daughter, Danielle Billings, in the conspiracy to manufacture and distribute cocaine base. After hearing evidence that Billings had bagged cocaine and relayed telephone messages for her mother, the judge departed because he found that, "as a mother, [Ledesma] aided, abetted, facilitated, and procured her daughter into the drug world." (R8–145). Even though Billings recently had reached the age of majority, she still lived with her mother, and the judge found that she was "under some recognizable constraint" to join her mother's drug business. (R9–10). These two departures increased Ledesma's guideline range to 324–405 months and resulted in her 324 month prison sentence. Defendant Ledesma now appeals these departures.

## II. DISCUSSION

One of the purposes of the Sentencing Guidelines is to promote uniformity among federal criminal sentences by restricting sentencing judges' discretion. *See* U.S.S.G. Ch. 1, Pt. A3, p.s. Judges sentencing under the guidelines first must make relevant factual findings according to the preponderance of the evidence. *See United States v. Terzado–Madruga*, 897 F.2d 1099, 1125 (11th Cir.1990). Then they must apply the sentencing guideline rules to those factual findings in order to determine the appropriate offense level and criminal history category. *See* U.S.S.G. § 1B1.1.

Except in unusual circumstances, 18 U.S.C. § 3553(b) requires a sentencing court to impose a sentence within the guideline range that corresponds to the defendant's adjusted offense level and criminal history category. A court may depart from the prescribed guideline range

only if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence" outside of the prescribed guideline range. 18 U.S.C. § 3553(b) (1988). Like other factual findings, the district judge's finding that a particular aggravating or mitigating circumstance exists is subject to review for clear error only. 18 U.S.C. § 3742(e) (1988). However, the district judge's legal conclusion that the circumstance justifies a departure from the guideline range is reviewed de novo. *United States v. Ponder*, 963 F.2d 1506, 1509 (11th Cir.1992).

A. *Departure for criminal activity related to the offense of conviction, but not reflected in the adjusted offense level*

We find no clear error in the district judge's finding of criminal activity beyond that charged in the offense of conviction and represented by defendant Ledesma's adjusted offense level. Our de novo review of the district judge's decision to depart based on this finding of fact, however, involves two inquiries. It is a question of law whether the evidentiary basis for this factual finding provides proper support for an upward departure. Similarly, it is a question of law whether 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 permit an upward departure for criminal activity related to the offense of conviction, but not reflected in the adjusted offense level. *United States v. Shuman*, 902 F.2d 873, 875–76 (11th Cir.1990).

1. *Was the evidentiary basis of the departure proper?*

In finding the existence of criminal activity not reflected in Ledesma's adjusted offense level, the district judge relied on evidence of incidents different from those used to calculate the adjusted offense level. The incomplete record before us does not include details of each of the separate incidents of misconduct on which the district judge relied. However, the record does show that the judge relied on "circumstantial evidence of the continuum and regulari-

ty and quantity of dealing." He found that Ledesma was extensively involved in the drug trade, "and not just on the few occasions that the FBI or the Atlanta police happened to make a buy."

 Ledesma's offense level was predicated on these "few occasions" involving the FBI and the Atlanta police. Therefore, it would have been impermissible "double counting" to rely on the same occasions in making the finding of criminal activity that supported an upward departure. District courts may not enhance a sentence on the basis of the same incidents that they used to determine the base level for sentencing. However, we affirm this departure because the district judge based his predicate finding of fact on evidence of incidents different from those included in the adjusted offense level calculation.[6] The district judge specifically referred to criminal conduct separate from those incidents involving the FBI or Atlanta police.[7] A finding of criminal activity related to the offense of conviction but inadequately represented by the defendant's adjusted offense level may support an upward departure when it is based on evidence of incidents not used to determine the adjusted offense level.

2. *Does 18 U.S.C. § 3553(b) permit an upward departure because of criminal activity related to the offense of conviction, but not reflected in the adjusted offense level?*

Since there was a proper evidentiary basis for the upward departure, the next question is whether 18 U.S.C. § 3553(b) permits an upward departure based on a factual finding of criminal activity not reflected in the adjusted offense level. This court has developed a three-part test to review upward departures made pursuant to § 3553(b).

> First, was the aggravating circumstance cited by the district court adequately taken into consideration by the Sentencing Commission in formulating the guidelines? Second, if adequate consideration was not given to the circumstance, was consideration of the circumstance consistent with the goals of the sentencing guidelines? If the circumstance was properly taken into account, was the extent of the departure from the guideline range reasonable?

*Shuman*, 902 F.2d at 875–76 (citations omitted).

In determining whether the Sentencing Commission adequately took a particular circumstance into account, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b) (1988). The guidelines show that defendant Ledesma's base offense level depended solely on the specific amount of cocaine involved in the offense and the surrounding relevant conduct. U.S.S.G. § 2D1.1, § 1B1.3, comment. (backg'd). Adjustments to this base offense level are permitted for circumstances like possession

---

6. Although Ledesma herself divulged much of the record evidence of criminal activity beyond that reflected in her adjusted offense level, the district judge expressly disclaimed any reliance on this evidence. (R8–94). As the district judge recognized, the information Ledesma divulged under her plea agreement would not have been a permissible basis for an upward departure. *United States v. Robinson*, 898 F.2d 1111 (6th Cir.1990). Thus, any reliance on this information would have invalidated the departure.

7. In discussing the evidentiary basis for this upward departure, the district judge also mentioned co-defendant Griffin's statement that "the sky is the limit" for Ledesma's potential cocaine purchases from an undercover agent. (R8–94). The district judge's mention of this statement is confusing. If the judge meant that Ledesma actually trafficked in a greater quantity of co-

caine than was represented by her offense level, then this statement would be an impermissible basis for an upward departure. *See United States v. Valencia–Lucena*, 925 F.2d 506, 516 (1st Cir.1991) (vacating defendant's sentence where the district court predicated the base offense level on a certain amount of cocaine, then departed because it did not believe that the defendant actually was involved with that amount). However, if the district judge simply meant that Ledesma was involved in criminal activity in addition to that represented by her adjusted offense level, this would be a permissible basis for an upward departure. Because we hold that this upward departure has a proper basis in incidents different from those used to determine the adjusted offense level, we do not address this remark on appeal.

of firearms,[8] use of an aircraft or vessel,[9] the defendant's role in the offense,[10] and the number of participants in the offense.[11] However, the guidelines do not authorize an offense level adjustment for criminal activity related to the offense of conviction, but excluded from the base offense level determination.[12]

The guidelines also do not authorize an adjustment of the defendant's criminal history category for this sort of criminal activity unrepresented in the offense level. On the contrary, the criminal history category depends on the defendant's conduct prior to, rather than contemporaneous with, the offense of conviction. *See* U.S.S.G. § 4A1.2. Because the conduct for which the judge departed upward occurred during the same time period as the offense of conviction, it was not taken into account by the criminal history category guidelines. In sum, because neither the offense level nor the criminal history category rules take this criminal conduct into account, we find that the Sentencing Commission did not adequately consider this circumstance in formulating the guidelines.

Next we turn to the second prong of the *Shuman* test, whether an upward departure for criminal activity inadequately represented by the defendant's adjusted offense level is consistent with the goals of the sentencing guidelines. We find that it

is. Section 1B1.3 directs a sentencing court to predicate a drug distribution defendant's base offense level on "all quantities and types of drugs not specified in the count of conviction ... if they were part of the same course of conduct ... as the count of conviction." U.S.S.G. § 1B1.3, comment. (backg'd). This is because drug distribution cases

> often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for the purposes of sentencing.... [Therefore, r]elying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses.

*Id.*

By analogy, if sentencing judges may consider all drug quantities that were part of the same course of conduct, they also may consider all criminal activity that was part of that course of conduct, even if it did not yield a finding of a specific quantity of drugs. Imposing a sentence based on "the entire range of conduct" is reasonable whether or not that conduct is represented by a finding of a specific quantity of drugs.[13] Indeed, the First and Second Circuits have permitted upward departures based on criminal activity related to the

---

8. U.S.S.G. § 2D1.1(b)(1).

9. U.S.S.G. § 2D1.1(b)(2).

10. U.S.S.G. §§ 3B1.1–3B1.4.

11. U.S.S.G. § 3B1.1(a) and (b).

12. We recognize that U.S.S.G. § 1B1.3, comment. (backg'd), provides for "quantities and types of drugs not specified in the count of conviction ... to be included in determining the offense level if they were a part of the same course of conduct or part of a common scheme as the count of conviction." This language does not apply to the situation presented here because the additional criminal activity in this case was not represented by a finding of a specific quantity of cocaine. Therefore, the district judge could not have included this additional criminal activity in his determination of the base offense level.

13. The reasonableness of basing criminal sentences on conduct related to the offense of con-

viction is well established. In the pre-guidelines case of *United States v. Lopez,* 898 F.2d 1505, 1512–13 (11th Cir.1990), the district judge increased a defendant's sentence for possession of 400 pounds of cocaine with intent to distribute because officers discovered the defendant in unexplained possession of $80,000.00 in cash. From the defendant's possession of this large amount of cash, the judge inferred that the defendant was "a substantial member of the drug trafficking community." *Lopez,* 898 F.2d at 1513. Based on this inference, the district judge enhanced the defendant's sentence, even though possession of the $80,000.00 in cash was not part of the offense of conviction, and was not per se illegal. This court affirmed the sentence enhancement, concluding that the sentencing judge did not abuse his discretion in considering both the conduct for which the defendant was convicted (possession of cocaine) and separate conduct (possession of cash) that was related to the offense of conviction.

offense of conviction, but not reflected in the adjusted offense level.[14] We also conclude that it is consistent with the goals of the sentencing guidelines to depart upward for criminal activity related to the offense of conviction, but not reflected in the adjusted offense level.

Finally, we come to the third prong of the *Shuman* test, whether the extent of the departure was reasonable. The district judge added one point to Ledesma's adjusted offense level based on a finding that she was "open for [drug dealing] business at least five, if not seven days a week 24 hours a day for the period discussed in the presentence report." (R8–94). We find that the addition of one offense level is reasonable compared to the extent of Ledesma's criminal activity. We therefore affirm this departure.

### B. *Departure for defendant Ledesma's involving her daughter in the drug trade*

■ We find no clear error in the district judge's factual finding that defendant Ledesma involved her daughter, Danielle Billings, in the drug trade. Even though Billings recently had reached the age of majority, there is no clear error in the district judge's finding that her involvement in the drug trade was the result of her mother's influence. On the basis of this finding, the district judge added two points to Ledesma's offense level. However, it is unclear whether the judge meant this enhancement to be an adjustment under § 3B1.3[15] or a departure under § 5K2.0. The district judge claimed to have *"departed* because, as a mother, [Ledesma] aided, abetted, fa-

cilitated, and procured her daughter into the drug world." (emphasis added). However, he then reasoned that "because judges are supposed to depart in a principled fashion, I found that the abuse of trust [guideline § 3B1.3] to be the closest analogous situation." (R8–145).

This enhancement of defendant Ledesma's sentence was permissible, whether it is characterized as a departure or an adjustment. There is ample precedent for departing upward based on a defendant parent's influencing his or her children to join in criminal activity. *United States v. Christopher,* 923 F.2d 1545, 1556 (11th Cir. 1991); *United States v. Shuman,* 902 F.2d 873, 875–76 (11th Cir.1990); *United States v. Porter,* 924 F.2d 395, 399 (1st Cir.1991). Moreover, we find that Ledesma's use of her daughter, Danielle Billings, to facilitate her endeavors in the drug trade would support an adjustment under § 3B1.3. Ledesma's use of her parental influence over Billings can be equated with an abuse of Billings' trust in her. Moreover, Billings' services in bagging cocaine and relaying drug-related telephone messages could be said to have significantly facilitated Ledesma's criminal activity, as required by § 3B1.3. Therefore, we affirm this enhancement of Ledesma's sentence, whether it is characterized as a departure under § 5K2.0 or an adjustment under § 3B1.3.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM defendant Miriam Ledesma's sentence for conspiracy to manufacture, distribute, and

---

**14.** *United States v. Hernandez,* 941 F.2d 133, 140 (2d Cir.1991) (after defendant pleaded guilty to possession of firearm by a felon, sentencing court could depart upward because defendant used the firearm in dealing drugs); *United States v. Figaro,* 935 F.2d 4, 8 (1st Cir.1991) (after defendant pleaded guilty to entering the United States after deportation, sentencing court could depart upward because defendant entered the country to facilitate the uncharged offense of smuggling aliens); *United States v. Stephenson,* 921 F.2d 438, 441 (2d Cir.1990) (after defendant was convicted of extortion and accepting a bribe, sentencing court could depart upward for separate bribery transactions relat-

ed to the offense of conviction); *United States v. Kim,* 896 F.2d 678, 684 (2d Cir.1990) ("with respect to acts of misconduct not resulting in conviction, the Commission intended to ... permit departures for acts that relate in some way to the offense of conviction").

**15.** This section directs the sentencing judge to increase the offense level by two degrees "if the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense...." U.S.S.G. § 3B1.3.

possess cocaine base with intent to distribute, in violation of 21 U.S.C. § 846.

AFFIRMED.