**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 17 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

DOLORES CONTRERAS,

      Defendant-Appellee.

No. 97-2224

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-92-486 LB)**

---

Thomas L. English, Assistant United States Attorney (John J. Kelly, United States Attorney, and Charles L. Barth, Assistant United States Attorney, Albuquerque, New Mexico, on the briefs), Albuquerque, New Mexico for Plaintiff-Appellant.

Vicki Mandell-King, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender with her on the briefs), Denver, Colorado for Defendant-Appellee.

---

Before **ANDERSON**, **McKAY** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

     From 1986 until 1992, Dolores Contreras participated in a drug conspiracy, run by her father, which sold more than 20,000 pounds of marijuana and more than

20,000 pounds of cocaine throughout the United States. After a mistrial Ms. Contreras was re-indicted, and late in 1994 she was convicted on four counts — conspiracy, investment of illicit drug profits, and two counts of money laundering. At sentencing, the district court granted Ms. Contreras' motion for a downward departure and sentenced her to 120 months imprisonment. On appeal, this court reversed the district court's decision to depart downward and remanded the case for resentencing. At resentencing, the district court again departed downward, reaching the same sentence of 120 months imprisonment. The government challenges the departure pursuant to 18 U.S.C. § 3742(b). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and again we reverse.

## I. Background

The history of this case up through the first appeal is well documented in United States v. Contreras, 108 F.3d 1255, 1258-61 (10th Cir. 1997). Therefore, we only briefly recount some early background for context and focus on events since our remand.

Dolores Contreras is one of twenty-two people charged by the government with participating in an extensive drug conspiracy run by her father, Gabriel Rodriguez-Aguirre. Mr. Rodriguez-Aguirre's family-run organization accounted

for the sale of over 20,000 pounds of marijuana and 20,000 pounds of cocaine throughout the United States between 1984 and 1992.

From December 1986 until October 1992, Ms. Contreras' role in her father's illicit business consisted primarily of storing large amounts of drugs at her Phoenix, Arizona home and using profits from drug sales. Ms. Contreras started assisting her father in this illegal enterprise when she was 17, but tellingly, she remained active in the criminal enterprise until she was 24, and even then, her participation stopped only because she and her father were arrested. On October 20, 1992, the United States charged Ms. Contreras with conspiracy to distribute more than 100 grams of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I). Ms. Contreras pled not guilty, and after one mistrial, the United States obtained a superseding indictment which charged Ms. Contreras with conspiracy to possess with the intent to distribute cocaine, conspiracy to distribute cocaine, receiving income from the distribution of controlled substances, and investing the ill-gotten gains, in violation of 21 U.S.C. § 854. On December 15, 1994, after a one-month trial, the jury convicted Ms. Contreras on four counts — conspiracy, investment of illicit drug profits, and two counts of money laundering.

At sentencing, the district court adopted the factual findings and guideline application in Ms. Contreras' presentence report, which assessed her base offense

level at 38, her criminal history category at I, and her guideline range at 235 to 293 months imprisonment. Nevertheless, the court granted Ms. Contreras' motion for a downward departure and sentenced her to 120 months in prison "to avoid [an] unwarranted disparity of sentences" between Ms. Contreras and co-conspirator Paula Denogean.

The government appealed Ms. Contreras' original sentence, and this court held that a disparity in sentences between Ms. Contreras and Ms. Denogean was an inappropriate ground for departure because the two were not similarly situated — "Ms. Contreras was convicted by a jury of four separate offenses, while Ms. Denogean pled guilty to one offense." Contreras, 108 F.3d at 1272. Accordingly, we held that the district court had abused its discretion and reversed Ms. Contreras' sentence and remanded the case to the district court.

At resentencing, the district court again departed downward from the applicable guideline range of 235 to 293 months imprisonment. Again the district court sentenced Ms. Contreras to 120 months in prison (the statutorily required minimum) — on the basis of parental influence, and, once again, on the disparity of sentences. Again the government appeals the sentence, claiming the district court relied on impermissible grounds for departure. And again we reverse the district court and remand for resentencing.

## II. Discussion

*A. Standard of Review*

After the Supreme Court's decision in <u>Koon v. United States</u>, 518 U.S. 81 (1996), departures from the Sentencing Guidelines must be reviewed under a unitary abuse-of-discretion standard. <u>See</u> <u>United States v. Collins</u>, 122 F.3d 1297, 1302 (10th Cir. 1997). In <u>Collins</u>, this court articulated the four-part inquiry a reviewing court must undertake in determining whether a district court abused its discretion in departing from the Guidelines. First, the court must determine "whether the factual circumstances supporting a departure are permissible departure factors." <u>Id.</u> at 1303. Second, the court must assess "whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure." <u>Id.</u> Third, the court must decide whether the record provides a sufficient factual basis for the departure. <u>See</u> <u>id.</u> Finally, the court must examine the degree of departure to assure it is reasonable. <u>See</u> <u>id.</u>

<u>Collins</u> explained that the first inquiry — whether the factual circumstances supporting departure are permissible departure factors — is a legal one, as to which we owe no deference to the district court, while the next three inquiries are more factual in nature, and accordingly are due more deference on review. <u>See</u> <u>id.</u> at 1302-03. In particular, "substantial deference" is given to the district court in

our review of the second factor — whether a particular defendant is within the heartland given all the facts of the case. See id.; United States v. Whiteskunk, 162 F.3d 1244, 1249 (10th Cir. 1998); United States v. Jones, 158 F.3d 492, 497 (10th Cir. 1998). In Koon, the Supreme Court stated:

> [W]hether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

518 U.S. at 98. While the Court acknowledged that "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point," the Court clearly stated that considerations of "whether [a factor] in the particular instance suffices to make the case atypical" is a "factual matter[]." Id. at 100.

However, this is not to say that a district court's decision to depart because the defendant's situation is outside the heartland is unreviewable. To the contrary, such decisions are reviewable under an abuse of discretion standard. And, an important consideration in evaluating whether the district court abused its discretion to depart will be whether the factor or factors relied upon are prohibited, discouraged, encouraged, or not discussed in the Guidelines. See id. at 98 ("The deference that is due depends on the nature of the question presented.").

For example, if the district court relied on an impermissible factor — an inquiry that we make de novo, see id. at 100 — the decision to depart would, as a matter of law, constitute an abuse of discretion. See United States v. Dominguez-Carmona, 166 F.3d 1052, 1056-57 (10th Cir. 1999); Whiteskunk, 162 F.3d at 1249-50 (if a departure decision is based on an impermissible factor it is error). Similarly, if the district court relied upon a permissible, but discouraged, factor our review of a decision to depart must take cognizance of the discouraged status of the factor relied upon in evaluating whether the district court abused its discretion. In short, the district court's exercise of discretion to depart in such circumstances must be measured against the backdrop that "[t]he Supreme Court has made it clear that when a factor is discouraged . . . 'the court should depart only if the factor is present to an exceptional degree . . . .'" United States v. Archuleta, 128 F.3d 1446, 1449 (10th Cir. 1997) (quoting Koon, 518 U.S. at 96); see also Dominguez-Carmona, 166 F.3d at 1057. In such circumstances "courts should depart downward only in rare cases." Archuleta, 128 F.3d at 1452 (reversing a district court's decision to depart downward based upon the discouraged factor of a defendant's family responsibilities); see also Jones, 158 F.3d at 499 (disapproving use of the discouraged factor of family responsibilities, but affirming downward departure on the basis of other supporting factors); United States v. Rodriguez-Velarde, 127 F.3d 966, 968-69 (10th Cir. 1997).

*B. Analysis*

At Contreras' resentencing, the district court identified two reasons for its downward departure. First, the court focused on the influence exerted on Ms. Contreras by her father, Gabriel Aguirre. Second, the court alluded to the disparity between the sentence range the Guidelines dictates for Ms. Contreras and the actual sentences that two of her co-conspirators received. Because neither factor individually, nor the two in combination, justify a departure from the Guideline range, we reverse.

*1. Sentencing Disparity —* We examine the second reason for departure first. At resentencing, the district court stated:

> My reasons for departure are because that others that
> were involved in this conspiracy either became ill or
> became a fugitive and then plead [sic] guilty later on all
> received considerably less sentences, less time than the
> 235 months which is the minimum allowed by the
> guidelines. Because of this disparity, although that's not
> the only reason, I am going to depart downward.

The record of the hearing indicates that the "others that were involved in this conspiracy" were co-defendants Paula Denogean and Maria Villalba. Due to unique circumstances, neither of them stood trial in the large, multiple-defendant prosecution in which Ms. Contreras was convicted. Ms. Denogean took ill before trial and was severed from the case. Ms. Villalba fled and was a fugitive at the

time of trial. When each became available for prosecution, instead of retrying its complicated case, the government reached an agreement with each co-conspirator that resulted in a sentence of significantly less time than the range the Guidelines dictate for Ms. Contreras.

While we recognize that Ms. Contreras' situation is unfortunate as compared to her co-conspirators, it was an abuse of discretion to predicate a downward departure on this basis. First, with regard to the comparison to Ms. Denogean, this court has already condemned a departure for Ms. Contreras based on a disparity of sentences. As we said the last time we reviewed this case: "The record reveals that Ms. Contreras went to trial and was convicted on four counts . . . . Ms. Denogean, on the other hand, accepted responsibility for her criminal conduct and pled guilty to a lesser charge . . . . Given their distinct situations, we conclude the trial court abused its discretion in concluding an 'unwarranted disparity' existed justifying downward departure." Contreras, 108 F.3d at 1271-72. Thus, it is the rule of this case from the previous appeal that the sentencing disparity factor with respect to Ms. Denogean will not support a downward departure. See Rohrbaugh v. Celotex Corp., 53 F.3d 1181, 1183 (10th Cir. 1995).

Moreover, the same principles that support our conclusion with regard to Ms. Denogean, convince us that the district court abused its discretion in departing downward in Ms. Contreras' case based on a disparity between her sentence and

that of Ms. Villalba.  In United States v. Gallegos, 129 F.3d 1140 (10th Cir. 1997), while we recognized that "the district court should consider . . . 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," id. at 1143 (quoting 18 U.S.C. § 3553(a)(6)), we explained that "the purpose of the guidelines is to eliminate disparities in sentencing nationwide, not to eliminate disparity between co-defendants."  Id. (quotation, alteration and citation omitted).  "This circuit has stated that 'neither Congress nor the [Sentencing] Commission could have expected that the mere fact of a difference between the applicable guideline range for a defendant [and] that of his co-defendant would permit a departure, either because the difference was too large or too small.'"  Id. (quoting United States v. Joyner, 924 F.2d 454, 460-61 (2d Cir. 1991)).

Observing that the Sentencing Reform Act, 18 U.S.C. § 3553(a)(6), seeks to eliminate not all sentencing disparities, but only "unwarranted" disparities, our cases establish that sentencing disparity between co-defendants is an impermissible departure factor when the defendants being compared either (1) pled to or were convicted of different offenses or (2) played significantly different roles in the commission of the same offense.  See also United States v. McMutuary, Nos. 98-1150, 98-1151, 1999 WL 274542, at *6 (7th Cir. May 5, 1999) ("justified disparities [can] never serve as a basis for a departure from the Guidelines

sentencing range"). While the issue of whether a departure factor is permissible or not is a legal question, we recognize that the necessary conclusions to resolve that question with regard to the sentencing disparity factor involve factual inquiries which we review for an abuse of discretion.

As noted above, the district court departed on the basis of the disparity in sentences without reference to either the co-conspirators' offense of conviction or role in the offense. Here, Ms. Villalba, like Ms. Denogean, was not situated similarly to Ms. Contreras. Thus, any disparity in their sentences was not "unwarranted," and the district court abused its discretion in departing downward on this basis. Most simply, after her capture, Ms. Villalba pled guilty to a lesser charge and was in a different situation from Ms. Contreras on sentencing. (Ms. Villalba's Plea Agreement indicates that she pled guilty to "Maintaining a Place for Distribution of Marijuana and Aiding and Abetting, in violation of 21 U.S.C. § 856(a)(1), 21 U.S.C. § 856(b), and 18 U.S.C. § 2.) Accordingly, the two were not similarly situated and we are in no position to second-guess the prosecutorial decisions of the United States Attorney's Office. See Contreras, 108 F.3d at 1272. In sum, the district court impermissibly relied on a sentencing disparity in granting Ms. Contreras' motion for a downward departure.

*2. Parental Influence* — At resentencing, the district court recognized the high standard that must be met to justify a departure under 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0.[1] Nevertheless the court concluded that "in this case a downward departure is warranted in connection with the influence that was [w]ielded by [Ms. Contreras' father,] Mr. Gabriel Aguirre."

Our first task is to classify the factor of parental influence in order to assess whether it provides a permissible basis for departure. The district court proceeded as if influence was different from other forms of coercion when exerted by a parent.[2] We disagree. While a parent's unique position vis-a-vis his or her child

---

[1]Incorporating 18 U.S.C. § 3553(b), U.S.S.G. § 5K2.0 states:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

[2]The district court found support for its "parental influence is different" argument in two pre-Koon cases from other circuits. In United States v. Ledesma, 979 F.2d 816 (11th Cir. 1992) and United States v. Locklear, Nos. 93-5490, 93-5535, 1994 WL 642196 (4th Cir. Nov. 15, 1994) (unpublished disposition), the Eleventh and the Fourth Circuits, respectively, held that upward departures could be justified for parents who involved their children in criminal activity. See Ledesma, 979 F.2d at 822, Locklear, 1994 WL 642196, at **3-4. This circuit recently affirmed the same position in an unpublished disposition. See United States v. Forsythe, No. 97-6250, 1998 WL 539462, at *3 (10th Cir. Aug. 24, 1998). Nevertheless, we do not find the district court's logic persuasive — just because the Guidelines will tolerate an upward departure based on a parent

(continued...)

- 12 -

may result in an ability to wield significant influence over that child, we believe such influence is most appropriately analyzed under the "Coercion and Duress" factor recognized in § 5K2.12.[3]

Before the district court, Ms. Contreras argued that there were two components to her father's coercive influence over her — a financial dependance and an emotional dependance. To the extent that the district court relied on any coercion stemming from her financial dependance on her father — or economic

---

[2](...continued)
involving his or her child in criminal activity does not mean that the Guidelines will permit a downward departure for a child who was brought into a life of crime by his or her parent. The Guidelines require no such zero-sum analysis. Accordingly, we analyze the parental influence exerted over Ms. Contreras under the recognized heading of coercion.

[3]Section 5K2.12 reads:

**Coercion and Duress** (Policy Statement)

If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. The Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence.

coercion — the court relied on an impermissible factor. As the § 5K2.12 policy statement makes clear: "The Commission considered the relevance of economic hardship and determined that personal financial difficulties . . . do not warrant a decrease in sentence." See also Gallegos, 129 F.3d at 1145 n.7 (explicitly condemning use of this factor in assessing coercion, stating "[t]he district court also mentioned the fact that Maden 'provided for all of [Gallegos'] daily needs. . . .' As such, to the extent the district court may have relied on [personal financial difficulties and economic pressures], the district court erred." (citations omitted)).

Turning to potential emotional coercion, we note that while the Guidelines recognize "serious coercion, blackmail or duress" as a potential ground for departing below the applicable guideline range, they also caution that "[o]rdinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency." U.S.S.G. § 5K2.12 (policy statement). Based on the Commission's affirmative statement of when a departure would "ordinarily" be warranted, this court has concluded that coercion in the absence of evidence of such enumerated serious threats is a discouraged basis for departure. See Gallegos, 129 F.3d at 1145 (in order to justify a departure based on coercion, the Guidelines ordinarily require evidence of

(1) a fear of a third party, that (2) "caused the defendant to commit the criminal act").

Here, Ms. Contreras acknowledges that "there was no evidence that Aguirre threatened Contreras with physical harm." Accordingly, we examine closely the evidence the district court relied on in concluding that Contreras' situation falls outside the ordinary, run-of-the-mill cases that the heartland encompasses. At resentencing, the district court realized that "in all likelihood Dolores could have exercised her option and said, 'Dad, I'm not going to have any part of this dope operation.'" The court observed further:

> She could have gone to live with her mother. The fact is she didn't. Whether or not a 17- or 18-year-old girl who doesn't have much education, who has one child when she's 15, and a couple later by a different father is going to take this upon herself and leave this organization.
> . . .
> I don't really think that Dolores Contreras had all these options. She had little children that needed feeding. She wanted to be close to those children. Here is a lot of free money floating around from whatever the source might be that allowed her to feed those children and not have to go back to school and get a job at a minimum wage.

Thus, the district court apparently departed downward based on the influence exerted on Ms. Contreras by her father in light of her youth and economic needs.[4]

_____

[4]On appeal, in a pro se supplemental brief, Ms. Contreras urges this court to consider her unusually high susceptibility to her father's influence due to her culture and religion. Ms. Contreras explains that "parental subservience is . . . fundamental to traditional Hispanic/Mexican-American culture. Its basis goes

(continued...)

The court thereby modified an already discouraged basis for departure (coercion in the absence of serious threats) by another discouraged consideration (age, specifically youth) and one altogether prohibited by the Guidelines (economic need), see supra.

As to the age factor, while youth, in and of itself, "is not ordinarily relevant in determining whether" to depart from the Guidelines, see U.S.S.G. § 5H1.1 (Age policy statement), we acknowledge that age may be relevant in determining whether one has been coerced. The very young are likely to be dependant on elders, and thus may be more susceptible to threats or deception, especially by parents. Because Ms. Contreras understands the difficulty in arguing that 24-year-olds are so youthful that they are unusually prone to coercion, she directs our attention to her age when she first entered the conspiracy. Ms. Contreras argues that when she began working for her father's drug operation she was only 17 years-old and very susceptible to influence. Without deciding at what age a person garners enough strength to withstand the coercive pressures of a parent, we note that everyone has the obligation to cease criminal activity once the coercion

[4](...continued)
beyond mere cultural norms and principles, however, with its genesis in the very heart of the Catholic/Christian Religion, specifically in the 5th Commandment's dictate '[h]onor your father and your mother.'"
    While we do not doubt the sincerity of Ms. Contreras' argument, the Sentencing Guidelines prohibit us from considering race, national origin, creed, and religion. See U.S.S.G. § 5H1.10.

subsides. Moreover, no one can rely on the fact that he or she was coerced when young to continue indefinitely in criminal activity without legal consequence.

With regard to whether Ms. Contreras' father exerted a sufficient level of influence over her to place her case outside the heartland, we find most instructive this court's decision in <u>Gallegos</u>, 129 F.3d at 1140. In <u>Gallegos</u>, we held that the influence exerted over the defendant (a young woman with a child who was living with a much older man upon whom she was economically dependant) by her older, live-in boyfriend to deal drugs was "not extraordinary and does not rise to a level of coercion which the guidelines countenance," despite the fact that the district court had found that the defendant had been subjected to "'significant influence, domination, and manipulation'" by her boyfriend. <u>Id.</u> at 1145 (quoting the district court).

After careful review of the record, construing the findings below in the light most favorable to Ms. Contreras, we see no evidence that her case involved an exceptional degree of coercion. On these facts, we hold that the district court abused its discretion in departing downward.

*3. Combination of factors* — Apparently recognizing the inappropriateness of grounding a departure in any of the factors discussed above, Ms. Contreras argues that "the Court may depart even if the factors considered individually would not

warrant departure if, taken in their totality, a departure is warranted."  In support

of her combination argument, Ms. Contreras quotes from the Commentary on

§ 5K2.0:

> The Commission does not foreclose the possibility of an extraordinary
> case that, because of a combination of such characteristics or
> circumstances, differs significantly from the "heartland" cases
> covered by the guidelines in a way that is important to the statutory
> purposes of sentencing, even though none of the characteristics or
> circumstances individually distinguishes the case.

Ms. Contreras stopped short of quoting the last sentence of the paragraph, which

reads:  "However, the Commission believes that such cases will be extremely

rare."  U.S.S.G. § 5K2.0 (commentary).

This is not one of those extremely rare cases.  As we have stated, neither

disparity of sentences nor coercion was an appropriate ground for departure.  The

former was impermissible because the defendants compared were not similarly

situated.  The latter was inappropriate in this case because any coercion exerted on

Ms. Contreras was not present to an exceptional degree taking her case outside the

heartland of the Guidelines.  Combining the legally impermissible and factually

inappropriate grounds for departure cannot make this case one of the "extremely

rare" cases contemplated by § 5K2.0.

Ms. Contreras attempts to rehabilitate the sentencing court's departure by

adding to the two inappropriate factors Ms. Contreras' family responsibilities.

While she acknowledges that family ties and responsibilities are disfavored bases

for departure, Ms. Contreras argues that in combination with other grounds, family responsibilities can be a proper consideration. In support of her position she cites two pre-Koon cases, United States v. Peña, 930 F.2d 1486 (10th Cir. 1991) and United States v. Tsosie, 14 F.3d 1438 (10th Cir. 1994). Neither of those cases are availing to Ms. Contreras. Both cases support only the proposition that family responsibilities can justify a departure (1) by informing a court's consideration of whether a defendant's criminal activity were aberrational — an encouraged factor for departure, see United States v. Talk, 158 F.3d 1064, 1072 (10th Cir. 1998), cert. denied, 119 S. Ct. 1079 (1999) — or (2) in combination with a finding of aberrational behavior, see Tsosie, 14 F.3d at 1441-42; Peña, 930 F.2d at 1495. Ms. Contreras has no claim to a departure based on aberrant behavior. Her six-year involvement in her father's large drug conspiracy stands in stark contrast to cases involving a "single act[] of aberrant behavior" that can justify a departure. See Peña, F.2d at 1495 (quoting U.S.S.G. ch. I, pt. A § 4(d) p.s., at p. 1.9 (1988)).

While we share the sentencing court's sympathy for Ms. Contreras based on the fact that the Guideline range will separate her from her three children for a prolonged period, this fact, neither alone nor in combination with the other impermissible grounds, can justify the downward departure. "Because family ties and responsibilities are a discouraged factor under the Guidelines, a district court may depart based on this factor 'only if the factor is present to an exceptional

degree . . . .'" United States v. Rodriguez-Velarde, 127 F.3d 966, 968 (10th Cir. 1997) (quoting Koon, 518 U.S. at 96); see also United States v. Gauvin, 173 F.3d 798, 807 (10th Cir. 1999). "Even considered as one factor supporting a composite mitigating circumstance," we have required a defendant's family circumstances to be "unusual" in order to justify a departure. See United States v. Jones, 158 F.3d 492, 499 (10th Cir. 1998).

In Jones, where the court considered the defendant's "family responsibilities not as the sole basis for departure, but in conjunction with ten other factors," the court concluded that "Mr. Jones' family responsibilities [were] not sufficiently unusual to render this discouraged factor a permissible basis for departure." Id. The court arrived at this conclusion, despite the fact that Mr. Jones' imprisonment deprived his three children of "substantial child support." See id. Similarly, in Rodriquez-Velarde, the court concluded the facts did not support a downward departure where the defendant's imprisonment left his three children, aged six, eight, and eleven, without a parent to care for or provide for them. See 127 F.3d at 968-69.

Here, the sentencing judge recognized the unremarkable situation presented by Ms. Contreras' case:

> I realize that the fact that somebody has three children, in and of itself, is no reason to depart downward. God only knows how many hundreds of parents it's been my misfortune to sentence. I realize every time I do it that that is breaking up a family, that it's

going to work to a disadvantage to those children. And as the government points out, if I took that into consideration, I wouldn't sentence people, I'd retire right now so I wouldn't have [to] do this again, or I'd depart downward and get reversed every time, because I realize that is not a reason.

At the time of resentencing, Ms. Contreras' three children were age 11, age 7, and age 6. Two of them were living with their father and the third was living with her grandmother. The children visited their mother only infrequently. Despite the personal tragedy of Ms. Contreras' family, we agree with the sentencing court that her family circumstances were not sufficiently unusual to warrant a departure. See Jones, 158 F.3d at 499. Consequently, we conclude that the totality of the inappropriate bases cannot support the downward departure.

Accordingly, we REVERSE the district court's decision to depart downward, and we REMAND for sentencing in conformity with this opinion.

No. 97-2224, United States v. Contreras

**McKAY**, Circuit Judge, dissenting:

I respectfully must dissent. I am not persuaded that U.S.S.G. § 5K2.12, "Coercion and Duress," is the proper framework for analyzing a claim of parental influence.

In this case, the district court partly justified its downward departure on "the influence that was [w]ielded by [Ms. Contreras' father,] Mr. Gabriel Aguirre." The court presumably based this determination on the following facts: Mr. Gabriel Rodriguez-Aguirre managed a family-run organization specializing in the sale and distribution of large amounts of marijuana and cocaine, see United States v. Contreras, 108 F.3d 1255, 1258 (10th Cir. 1997), and he influenced his daughter, the defendant in this case, to join his criminal enterprise. In analogizing "Coercion and Duress" to "parental influence," the majority tacitly concedes that the Sentencing Guidelines do not directly address the notion of parental influence. I think the analogy is an odd one that does not coincide with my experience. In my view, a parent's unique position vis-a-vis his or her child is *substantially* different from the traditional notion of coercion. For several reasons, I believe that the concept of parental influence does not fall within the rubric of coercion and duress but is a distinct type of influence that was not considered by the Guidelines.

First, coercion analysis is inappropriate in all cases of parental influence. While evidence of a threat of physical injury or damage to person or property may exist in some cases, requiring such evidence in all cases asserting parental influence ignores the nature of the filial relationship in which a child loves and obeys a parent. Indeed, filial piety has been recognized as underlying a permissible basis for a downward departure. See United States v. Monaco, 23 F.3d 793, 800 (3d Cir. 1994) (determining that defendant-father's anguish over bringing child into criminal activity was proper basis for downward departure, especially where adult child had "dutifully and unquestioningly honor[ed] his father's request").

Additionally, I find it equally odd that conduct which justifies upward departures does not justify downward departures for the victims of the conduct. Circuit decisions which have sanctioned upward departures for a parent based on the parent's influencing a child to join the criminal activity are instructive. For example, the Fourth Circuit held that an upward departure was warranted even absent coercion where "the parent exposes the child to a drug business environment and thereby facilitates the child's ability to obtain illegal drugs." United States v. Locklear, 41 F.3d 1504, 1994 WL 642196, at **3 (4th Cir. 1994) (Table). This court, as well as the First, Eighth, and Eleventh Circuits, have also analyzed the parental-influence question without relying on coercion. See United

States v. Forsythe, 156 F.3d 1244, 1998 WL 539462, at **4 (10th Cir. 1998) (holding that the use of parental influence to induce one's child to join in criminal activity may provide a basis for upward departure); United States v. Ledesma, 979 F.2d 816, 822 (11th Cir. 1992) (affirming sentence enhancement under U.S.S.G. § 3B1.3 because defendant, as mother, held a position of trust which she abused when she involved her daughter in the drug conspiracy); United States v. Jagim, 978 F.2d 1032, 1042 (8th Cir. 1992) (affirming upward departure partly based on fact that defendant's "nephew, while perhaps not a 'vulnerable victim' within the meaning of U.S.S.G. § 3A1.1 . . . , nevertheless was dragged into the [tax shelter fraud] conspiracy by his uncle in part because of the familial relationship"); United States v. Porter, 924 F.2d 395, 399 (1st Cir. 1991) (upholding upward departure based on finding that defendant had urged his son to rob another bank to obtain money for his (defendant's) bail); United States v. Christopher, 923 F.2d 1545, 1556 (11th Cir. 1991) (affirming upward departure that was premised in part on the defendant's "apparent willingness to corrupt members of his family, including his own children, by involving them in criminal activities"); United States v. Shuman, 902 F.2d 873, 875-76 (11th Cir. 1990) (affirming upward departure under 18 U.S.C. § 3553(b) for defendant's willful incorporation of her son into the drug-trafficking business and his resulting chemical dependency and easy access to drugs). Each of these cases recognized the unique ability of a

parent, or parental figure, to influence a child. Cf. Jagim, 978 F.2d 1032 (uncle-nephew relationship). I cannot see how the essence of that relationship would change depending on whether the court is examining it for an upward or a downward departure.

It is also significant that nothing in the Guidelines indicates that § 5K2.12, the coercion and duress factor, was intended to cover the parent-child relationship.[1] Moreover, all of the cases mentioned above addressing whether parental influence is a permissible basis for an upward departure sanctioned the departures based on U.S.S.G. § 5K2.0 or 18 U.S.C. § 3553(a) and (b), after finding that the Guidelines do not specifically discuss "the abuse of parental authority in a criminal enterprise." Forsythe, 1998 WL 539462, at **3; see, e.g., Shuman, 902 F.2d at 876 (stating that parental influence factor was not taken into consideration by the Sentencing Commission in drafting the Guidelines and concluding that the use of a custodial relationship to force child to engage in criminal conduct is a valid aggravating factor); see also Locklear, 1994 WL 642196, at **3 (analyzing

_____

[1]In fact, I could find only one case in which the parent-child relationship was analyzed in this context, based upon the defendant's raising § 5K2.12 as a claim of error. See United States v. Vela, 927 F.2d 197, 200 (5th Cir. 1991). In that case, the Fifth Circuit rejected the defendant's claim that the district court erred in refusing to depart downward on the basis of parental coercion. The court stated that no threat of violence to person or property occurred, and, "moreover, any improper influence that may be attributed to [defendant's] mother did not amount to coercion so serious that, even without threats, it justified a downward departure." Id.

propriety of upward departure based on parental influence under § 5K2.0); Jagim, 978 F.2d at 1042 (evaluating upward departure for parental influence under § 5K2.0 and 18 U.S.C. § 3553(b)); Porter, 924 F.2d at 399 (same). Likewise, no section of the Guidelines, including § 5H1.6 ("Family Ties and Responsibilities"), specifically addresses a parent's influence over a child in the context of a downward departure. In other words, no Guideline provision expressly prohibits or discourages the consideration of parental influence in downward departure decisions. At the same time, the Guidelines have aimed to provide special protection to minors and others in custodial care, albeit in other contexts. See, e.g., U.S.S.G. § 2D1.2 (prescribing sentence enhancement for distributing drugs to a minor); § 2A3.1 (increasing sentence for sexual abuse if the victim was a minor or in the custody, care, or supervisory control of the defendant).

Finally, I think parental influence constitutes a mitigating circumstance under 18 U.S.C. § 3553 which, under the right facts, could sustain a downward departure. One kind of mitigating circumstance that would justify a downward departure is one which "somehow reduces a defendant's guilt or culpability. It is a circumstance that 'in fairness and mercy[] may be considered as extenuating or reducing the degree of moral culpability.'" United States v. Newby, 11 F.3d 1143, 1148 (3d Cir. 1993) (citation omitted), limited as dicta by Monaco, 23 F.3d at 802-03 (listing other circumstances which are relevant to and have justified downward

departures even though not indicative of reduced guilt or culpability). I am of the view that parental influence is exactly the type of mitigating circumstance which may reduce a defendant's guilt because it speaks directly to her personal responsibility in entering the criminal enterprise.

I therefore would hold that parental influence is a "'mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Accordingly, where the facts of a case take it outside the "heartland" of cases considered by the Guidelines, parental influence may warrant a downward departure. See Koon v. United States, 518 U.S. 81, 96 (1996). For these reasons, I would analyze Ms. Contreras' claim of parental influence in its own right, unconstrained by a § 5K2.12 analysis.

Admittedly, the evidence from which the sentencing court concluded that parental influence provided a basis for a downward departure is not overwhelming. However, in light of the great deference we owe to the sentencing court's findings that a particular defendant is within or outside the Guidelines' heartland of cases given all the facts of the case, see United States v. Collins, 122 F.3d 1297, 1302-03 (10th Cir. 1997), and the alacrity with which we routinely sustain "enhancements," "upward departures," and findings of "relevant conduct" on

equally thin evidentiary support, I would have no trouble affirming the decision to

depart downward in this case.[2]

_____

[2]Although I agree with the majority's determination that the sentencing court improperly based the downward departure on a disparity in sentences, I would not remand this case because I think that the district court "'would have imposed the same sentence absent reliance on the invalid factor[].'" Collins, 122 F.3d at 1303 n.5 (quoting Koon, 518 U.S. at 113).