**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 14 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellant,
        Cross-Appellee,

        v.

GENEVA GALLEGOS, also known as
Leann Rael,

        Defendant - Appellee,
        Cross-Appellant.

Nos. 96-2240 & 96-2242

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-94-211-MV)**

Richard A. Friedman, Department of Justice, Appellate Section Criminal
Division, Washington, D.C. (John J. Kelly, United States Attorney, and Tara C.
Neda, Assistant U.S. Attorney, District of New Mexico, Albuquerque, New
Mexico, with him on the briefs), for Appellant/Cross-Appellee.

Adam G. Kurtz, Albuquerque, New Mexico, for Appellee/Cross-Appellant.

Before **ANDERSON**, **EBEL**, and **LUCERO**, Circuit Judges.

**ANDERSON**, Circuit Judge.

Ms. Geneva Gallegos was convicted of possession with intent to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a). After finding Gallegos qualified for an acceptance of responsibility adjustment and departing downward from the Sentencing Guidelines[1] range, the district court sentenced her to 34 months in prison, followed by five years supervised release. The court departed downward from Gallegos' base offense level based on five factors: (1) an inexplicable disparity of sentences between Gallegos and co-defendant John Paul Wilbon, (2) Gallegos' minor role in the offense, which was limited to the four to six weeks she lived with co-defendant Levone Ray Maden, (3) the court's finding that Gallegos was "under significant influence, domination, and manipulation" because of her youth and her dependance on Maden for her daily needs, (4) Gallegos' lack of criminal history, and (5) Gallegos' family responsibilities as the sole support for her six-year-old son and partial support for her parents. R. Vol. III at 11-14. The Government appeals, alleging the district court erred in departing from the Sentencing Guidelines on these bases. The Government also appeals the district court's finding that Gallegos qualified for an

---

[1]U.S. Sentencing Guidelines Manual (1995) [hereinafter USSG].

acceptance of responsibility adjustment.[2]  We vacate the sentence and remand for resentencing.

## BACKGROUND

In March 1994, while executing a fugitive arrest warrant for co-defendant Maden, FBI agents found large quantities of crack cocaine in an apartment shared by Maden and Ms. Gallegos.  A third defendant, Wilbon, was found in the apartment at the time of entry and was arrested along with Maden and Gallegos.  All three were charged with possession with the intent to distribute more than 50 grams of a mixture or substance which contains cocaine base,[3] and after a jury trial in January 1996, Gallegos and Maden were convicted.  Pursuant to a plea agreement, Wilbon pleaded guilty to a lesser charge of possession with intent to distribute less than five grams of crack cocaine.

At her initial sentencing hearing in July 1996, Gallegos testified that she had assisted Maden in his drug dealing prior to the night of her arrest.  In

---

[2]Ms. Gallegos originally cross-appealed her conviction based upon allegedly improperly admitted evidence regarding a co-defendant, Mr. Maden.  However, after this Court's rejection of Maden's evidentiary challenge in United States v. Maden, 114 F.3d 155 (10th Cir. 1997), cert. denied, No. 97-5356, 1997 WL 434805 (U.S. Oct. 6, 1997), Gallegos concedes that her cross-appeal must be rejected as well.  Appellee/Cross-Appellant's Supplemental Br. at 2.  We agree and therefore do not address this issue.

[3]Wilbon was also initially charged with possession with intent to distribute a mixture or substance which contains cocaine base, in violation of 21 U.S.C. § 841(a)(1).

particular, Gallegos admitted to distributing drugs from a motel room, renting motel rooms with the knowledge drug activity would be conducted there, accompanying Maden on drug-distribution trips, and responding to calls for drugs. R. Supp. Vol. I at 10-13.

When the sentencing hearing resumed in September 1996, the district court accepted the recommendation of the presentence report ("PSR") that Gallegos' base offense level should be 34 under USSG § 2D1.1(c)(3), and also accepted the PSR recommendation that Gallegos receive a two-level downward adjustment as a minor participant pursuant to USSG § 3B1.2. In addition, the court found that Gallegos qualified for the safety-valve provision of USSG § 5C1.2, which freed Gallegos from the ten-year statutory minimum sentence and earned her a further two-level downward adjustment. Furthermore, the court found Gallegos deserving of a downward adjustment for acceptance of responsibility under USSG § 3E1.1(a); however, it is unclear whether this adjustment was actually granted.[4] Finally, the court departed downward from the base offense level eleven levels

---

[4]Based on the original offense level of 34, and the two-level adjustments under the safety-valve, minor participant, and acceptance of responsibility provisions, the base offense level determined by the court before calculating any relevant departures should have been 28. However, the court stated in the sentencing hearing that the base offense level was 29. R. Vol. III at 11. Then, the court announced that it would "depart 11 levels to an offense level of 19," R. Vol. III at 14, which would mean the court was actually computing from a base offense level of 30–not 29 as the court initially stated or 28 as it should have been had an acceptance of responsibility adjustment been granted.

and sentenced Gallegos to 34 months' imprisonment, followed by five years supervised release.

## DISCUSSION

### I. Departure from the Guidelines

We review a district court's decision to depart from the Sentencing Guidelines for abuse of discretion. Koon v. United States, 116 S. Ct. 2035, 2047-48 (1996); United States v. Lowe, 106 F.3d 1498, 1501 (10th Cir.), cert. denied, 117 S. Ct. 2494 (1997). In Koon, the Court found "[a] district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Id. at 2046. The Court reasoned that district courts have an "institutional advantage" over appellate courts in making departure decisions since they deal with such determinations on a daily basis. Id. at 2046-47.

Nevertheless, the Court also concluded that "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." Id. at 2047. "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Id. at 2048. We have summarized our analysis as:

(1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable.

United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997). The first inquiry is a legal question, the second is factual.

In general, a court must impose a sentence within the guideline range unless it finds "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); see USSG § 5K2.0, p.s. We therefore address each factor relied on by the district court to see whether the factor is encouraged and ordinarily relevant to the sentencing determination, and if so, if it has already been taken into consideration by the guidelines. If the factor is discouraged and not ordinarily relevant, or is encouraged but has already been taken into consideration by the guidelines, we then determine whether the "characteristic or circumstance is present to an unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing." USSG § 5K2.0, p.s.

## A. Disparity of Sentences

The first ground for departure relied on by the district court was the disparity of sentences between Gallegos and co-defendant Wilbon. R. Vol. III at 12. The court recognized that Wilbon was sentenced to only 30 months in prison, while Gallegos, who played only "a minor role in the instant offense and was equally [or] less culpable," faced a potential sentence exposure of ten years. R. Vol. III at 11-12. The Government argues that the disparity between Gallegos' guideline range and Wilbon's sentence did not provide a lawful basis for departure. Appellant's Br. at 15-21. We agree.

It is true that in imposing a sentence, the district court should consider, inter alia, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, the purpose of the guidelines is to "eliminate unwarranted disparities [in sentencing] nationwide," United States v. Garza, 1 F.3d 1098, 1100 (10th Cir. 1993), not to eliminate disparity between co-defendants. This circuit has stated that "neither Congress nor the [Sentencing] Commission could have expected that the mere fact of a difference between the applicable guideline range for a defendant [and] that of his co-defendant would permit a departure, either because the difference was too large or too small." Id.; see United States v. Joyner, 924 F.2d 454, 460-61 (2d Cir. 1991) ("To reduce the

sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country.").

In particular, a departure based on a disparity between co-defendants is not justified when sentences are dissimilar because of a plea bargain.

> [A] trial judge may not reduce a defendant's sentence on the mere basis that a co-defendant who engaged in similar conduct but agreed to plead guilty to lesser charges received a lighter sentence. Any rule to the contrary would invade the United States Attorney's broad prosecutorial discretion. Moreover, "allowing a defendant's sentence to be reduced on account of a codefendant's plea bargain may tend to discourage the government from offering plea bargains in cases involving multiple defendants."

United States v. Contreras, 108 F.3d 1255, 1271 (10th Cir.) (quoting United States v. Mejia, 953 F.2d 461, 468 (9th Cir. 1992)), cert. denied, No. 96-9286, 1997 WL 336905 (U.S. Oct. 6, 1997). Here, Ms. Gallegos went to trial and was convicted of possession with intent to distribute more than 50 grams of crack cocaine, while Wilbon, on the other hand, pled guilty to the lesser charge of possession with intent to distribute less than five grams of crack cocaine. Because of Wilbon's plea bargain, Gallegos and Wilbon were not similarly situated and any disparity in their sentences is explicable. See Contreras, 108 F.3d at 1271 ("[W]hile similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is

explicable by the facts on the record.") (quotations and citations omitted). We therefore conclude that the district court erred in reducing Ms. Gallegos' sentence based upon disparity with the sentence of a co-defendant who pled guilty to a lesser charge.

### B. Minor Role

Next, the district court relied on Gallegos' limited role in the offense in granting the departure. The court determined that Gallegos played a minor role in the drug activity as compared to co-defendant Wilbon, R. Vol. III at 11, and noted that Gallegos' involvement in the drug activity was limited to the time she lived with co-defendant Maden.[5] R. Vol. III at 12. The Government asserts that this factor, although ordinarily relevant, had been already accounted for in the guidelines. Appellant's Br. at 21-24. We agree.

A defendant's role in the offense is ordinarily relevant in determining the appropriate sentence. USSG § 5H1.7, p.s. However, in Gallegos' circumstances, this factor had already been adequately accounted for in the guidelines by § 3B1.2. See Koon, 116 S. Ct. at 2045 (stating that relevant factors do not justify departure when already taken into consideration by the guidelines, unless present

---

[5]We note, however, that Gallegos' counsel admitted at the initial sentencing hearing that "Geneva [Gallegos] . . . was involved to the same extent as John Paul [Wilbon]. Not the length, but the actual extent." R. Supp. Vol. I at 54.

to an exceptional degree). Under § 3B1.2, a defendant can receive a downward adjustment of four levels if the defendant's participation in the offense was minimal, two levels if the defendant's participation was minor, and three levels if the defendant's participation falls between minimal and minor. USSG § 3B1.2. Here, the court granted Ms. Gallegos only a two-level adjustment as a minor participant, but then granted her an additional downward departure under § 5H1.7. In this instance, we see no basis for doing more for Gallegos than the guidelines provided for in § 3B1.2, and if such basis exists, the district court did not point it out, and Gallegos' counsel cited no authority in support it. In particular, the court erred in departing from the guidelines without explaining why the guideline adjustment provisions were inadequate to account for Gallegos' circumstances. See USSG § 5K2.0 ("[T]he court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (e.g., as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate."). We therefore conclude that the district court erred in granting without explanation an additional departure for minor role under § 5H1.7.

## C. Coercion

Next, the district court inferred that Ms. Gallegos was subject to coercion, stating that Maden subjected her to "significant influence, domination, and manipulation." R. Vol. III at 12. The Government asserts that this influence is not extraordinary and does not rise to a level of coercion which the guidelines might countenance. Appellant's Br. at 24-28. We agree.

The guidelines state that "[o]rdinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency." USSG § 5K2.12, p.s. Here, the record contains no evidence of threats made by Maden to Gallegos; the only evidence offered by the defense was Gallegos' comment at the sentencing hearing that she refused to testify against co-defendant Maden because at the time she was "just scared" and "[didn't] know if he would, you know, try to threaten [her] in any way."[6] R. Supp. Vol. I at 35.

Furthermore, to justify a departure, the alleged coercion must have caused the defendant to commit the criminal act. USSG § 5K2.12, p.s. (stating that departure is allowed "[i]f the defendant committed the offense because of serious

---

[6]We note that speaking of USSG § § 5K2.12 and 5K2.13, which deal respectively with coercion and duress and diminished capacity, Gallegos' counsel admitted at the initial sentencing hearing that he did not "believe the evidence would satisfy either one of those, in [and] of themselves." R. Supp. Vol. I at 52.

coercion . . . or duress"). In this case there is no evidence in the record of a

causal connection—no evidence that Gallegos was afraid of Maden at the time she

lived with him and participated in the drug activity. Thus, even if Gallegos' fear

of Maden at the time of trial were sufficient to qualify as coercion under the

guidelines, departure is still not justified because Gallegos has failed to show that

this fear caused her to participate in the drug activity. Because the record shows

no threats made to Gallegos by Maden, and there is no evidence of a causal

connection, the coercion factor is an impermissible basis for departure in this

case.[7]

## D. Criminal History

Next, in granting the departure, the district court relied on the fact that

Gallegos had no prior criminal history. R. Vol. III at 12. The Government asserts

that in this case it was impermissible for the district court to use Gallegos' lack of

---

[7]We note additionally that the district court made mention of Gallegos' youth and the fact that Maden was twice her age. R. Vol. III at 12. "Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." USSG § 5H1.1, p.s. As such, because Gallegos' youth is not extraordinary enough to justify applying a generally irrelevant factor, to the extent the district court may have relied on this factor, the district court erred.

The district court also mentioned the fact that Maden "provided for all of [Gallegos'] daily needs." R. Vol. III at 12. "[P]ersonal financial difficulties and economic pressures . . . do not warrant a decrease in sentence." USSG § 5K2.12. As such, to the extent the district court may have relied on this factor, the district court erred.

criminal history as a basis for downward departure. Appellant's Br. at 28-30. We agree.

"The lower limit of the range for Criminal History Category I is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of the criminal history cannot be appropriate." USSG § 4A1.3, p.s.; see United States v. Maldonado-Campos, 920 F.2d 714, 719 (10th Cir. 1990) ("In downward departures, the court ordinarily will look to the next-lower criminal history category for guidance, however, a departure below criminal history category I is not appropriate.") (citations omitted). Thus, although criminal history is ordinarily relevant in determining the appropriate sentence, USSG § 5H1.8, this factor was already taken into account when the court placed Gallegos in criminal history category I and any further downward departure was inappropriate.

### E.  Family Responsibilities

Finally, the court relied on Gallegos' family responsibilities in granting the departure, finding that she provides the sole support for her six-year-old son and partial support for her parents. R. Vol. III at 12. The Government argues that

Gallegos' circumstances fall within the heartland and thus cannot be a lawful basis for departure. Appellant's Br. at 30-35. We agree.

Although in the past this circuit has affirmed departures in cases involving family responsibilities, see, e.g., United States v. Pena, 930 F.2d 1486 (10th Cir. 1991); United States v. Tsosie, 14 F.3d 1438 (10th Cir. 1994), family responsibilities is in general a disfavored ground for departure. USSG § 5H1.6. As such, any family circumstances must be extraordinary before a departure can be justified. In both Pena and Tsosie, the family circumstances alone were not extraordinary; rather, the departures were based primarily on aberrant behavior, supported by family responsibilities. See Pena, 930 F.2d at 1495 ("The aberrational character of her conduct, combined with her responsibility to support two infants, justified a departure."); Tsosie, 14 F.3d at 1441-42 ("Tsosie's steady employment, economic support of his family, combined with his aberrational conduct . . . were properly considered by the court in departing downward.").

Gallegos concedes that in her case, family responsibilities alone do not take her case out of the heartland, and thus is not a sufficient ground for departure,[8]

---

[8]We note that in this circuit, single parenthood alone or support of minor children alone may not be a sufficient ground for departure. See United States v. Rodriguez-Velarde, No. 96-2292, 1997 WL 640618, at *3-4 (10th Cir. Oct. 17, 1997) (stating that a defendant whose wife passed away subsequent to his arrest, leaving behind three effectively orphaned children, has "failed to demonstrate that his family ties and responsibilities are extraordinary"); United States v. Webb, 49 F.3d 636, 638-39 (10th

(continued...)

Appellee's Br. at 21 (citing Tsosie), but argues that she deserves a departure based on a totality of circumstances analysis similar to that used in Pena and Tsosie. Appellee's Br. at 21. However, this is not possible because we have concluded that the other four factors considered by the court in addition to family responsibilities were inappropriate grounds for departure. Thus, we conclude that Gallegos' family circumstances, although regrettable, fall within the heartland contemplated by the guidelines and do not justify a departure.

## II. Acceptance of Responsibility Adjustment

In addition to departing downward from the base offense level, the district court found Ms. Gallegos deserving of a downward adjustment for acceptance of responsibility pursuant to § 3E1.1, based on her post-trial written statement of February 1996 and her testimony at the initial sentencing hearing. R. Vol. III at 10. In response, the Government argues that Gallegos was disqualified from the acceptance of responsibility credit. Appellant's Br. at 35-38. We agree.

---

[8](...continued)
Cir. 1995) (stating that being the sole caretaker of a child is not extraordinary); United States v. Ziegler, 39 F.3d 1058, 1062 (10th Cir. 1994) (stating that supporting three children is not extraordinary). However, it is unnecessary to reach this point because of Gallegos' concession that her family circumstances alone do not take her case out of the heartland.

A district court has broad discretion to grant or deny an adjustment for acceptance of responsibility, and a court of appeals should not reverse the district court's decision unless it is clearly erroneous. United States v. Jaynes, 75 F.3d 1493, 1508 (10th Cir. 1996); see USSG § 3E1.1, comment. (n.5) ("[T]he determination of the sentencing judge is entitled to great deference on review."). However, the defendant bears the burden of proving she is entitled to a reduction under § 3E1.1. Jaynes, 75 F.3d at 1508; United States v. Ivy, 83 F.3d 1266, 1292 (10th Cir.), cert. denied, 117 S. Ct. 253 (1996); United States v. Whitehead, 912 F.2d 448, 450 (10th Cir. 1990).

We are not persuaded that in this case the defendant has met that burden. Referring to acceptance of responsibility, the Sentencing Guidelines state, "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." USSG § 3E1.1, comment. (n.2). Clearly, "[t]he timeliness of the defendant's acceptance of responsibility is a consideration." Id. at comment. (n.6). Forcing the government to prove its case at trial and then expressing remorse, as Gallegos has done, is not a timely acceptance of responsibility. See, e.g., United States v. Jaramillo, 98 F.3d 521, 526 (10th Cir.) (finding defendant not entitled to reduction in sentence for acceptance of responsibility where defendant contested his guilt and gave

inadequate initial statement of acceptance of responsibility), <u>cert. denied</u>, 117 S. Ct. 499 (1996); <u>Ivy</u>, 83 F.3d at 1293 ("[A] defendant who denies factual guilt and forces the government to prove it at trial is not entitled to a reduction for acceptance of responsibility . . . ."); <u>United States v. Portillo-Valenzuela</u>, 20 F.3d 393, 394 (10th Cir. 1994) ("Pleading not guilty and requiring the government to prove guilt at trial demonstrate denial of responsibility . . . ."); <u>United States v. McCollum</u>, 12 F.3d 968, 973 (10th Cir. 1993) (affirming district court's denial of acceptance of responsibility adjustment where defendant went to trial).

Although choosing to proceed to trial "does not automatically preclude a defendant from consideration for such a reduction," if a defendant does choose trial, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."[9]  USSG § 3E1.1, comment. (n.2).  Here, because the district court relied solely on statements Ms. Gallegos

---

[9]The guidelines state:

Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction.  In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).  In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

USSG § 3E1.1, comment. (n.2).

made after trial, the court erred in granting Gallegos an adjustment for acceptance of responsibility.

## CONCLUSION

For the foregoing reasons, we VACATE the sentence imposed by the district court and we REMAND this case for resentencing not inconsistent with this opinion.