347 F.3d 441
 UNITED STATES of America, Appellant,
v.
Carmen COTTO, a/k/a "CC," Defendant-Appellee,
Frank Estrada, a/k/a "Terminator," a/k/a "Big Dog," a/k/a "Frankie Estrada," a/k/a "Mustard"; Edward Estrada, a/k/a "French Fry," a/k/a "Fry"; Isaias Soler, a/k/a "Eso"; Nelson Carrasquillo; William Rodriguez, a/k/a "Billy Rodriguez," a/k/a "William Gomez," a/k/a "Billy Gomez," a/k/a "Billy the Kid"; Felix Dejesus, a/k/a "Dino"; Charles Dejesus, a/k/a "Chino"; Edward Lawhorn, a/k/a "Fat Boy"; Yamarr Shipman, a/k/a "Country," a/k/a "Mar"; Michael Hilliard, a/k/a "Mizzy"; Pablito Cotto; Rosario Cotto, a/k/a "Sato"; Benito Rosario; Ricardo Rosario, a/k/a "Q"; Jermaine Jenkins, a/k/a "Fats"; Makene Jacobs, a/k/a "Madee"; Joseph Butler, a/k/a "Pee Wee"; Viviana Jimenez; Kelvin Vereen, a/k/a "Nino"; Felipe Santana, a/k/a "Omar Soto"; Tamarius Maner, a/k/a "Trigger"; Gloria Vargas; Hector Cruz, a/k/a "Casper"; Hector Gonzalez, a/k/a "June Bug"; Enrique Martinez, a/k/a "Ricky Zapata," Defendants.
 Docket No. 02-1344.
 United States Court of Appeals, Second Circuit.
 Argued: August 7, 2003.
 Decided: October 23, 2003.
 
 COPYRIGHT MATERIAL OMITTED James I. Glasser, Assistant United States Attorney (Kevin J. O'Connor, United States Attorney for the District of Connecticut, Jeffrey A. Meyer, Assistant United States Attorney, on the brief), New Haven, CT, for appellant.
 Jeremy N. Weingast, Hartford, CT, for defendant-appellee.
 Before: JACOBS and SOTOMAYOR, Circuit Judges.*
 SOTOMAYOR, Circuit Judge.
 
 
 1
 The United States of America appeals from the judgment of the District Court for the District of Connecticut (Stefan R. Underhill, Judge) entered May 3, 2002, sentencing defendant-appellee Carmen Cotto to twenty-four months' imprisonment upon a guilty plea to one count of conspiracy to engage in witness tampering/obstruction of justice in violation of 18 U.S.C. §§ 371 and 1512(b)(3). The district court granted a downward departure from the statutory maximum of sixty months' imprisonment pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 5K2.12.[1] Section 5K2.12 permits a downward departure from the applicable Guidelines range "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." U.S.S.G. § 5K2.12. The district court found that Cotto conspired with co-defendant Isaias Soler to obstruct justice because she feared for her safety if she refused. The court also found that Cotto's fear was based not on any specific threat made by Soler, but rather on her knowledge of him as "someone who is frequently engaged in criminal activity and who has murdered someone in [her] presence." We hold that a generalized fear based solely on the defendant's knowledge of a third party's criminal history is insufficient to constitute serious coercion or duress under § 5K2.12. We therefore vacate the judgment of the district court and remand for resentencing.
 
 BACKGROUND
 
 2
 On January 3, 2002, Carmen Cotto pleaded guilty to one count of conspiracy to engage in witness tampering/obstruction of justice in violation of 18 U.S.C. §§ 371 and 1512(b)(3). The charging indictment detailed a larger criminal enterprise involving twenty-one other defendants, accusing them of multiple narcotics conspiracies, murder in furtherance of a racketeering enterprise, assault, firearms crimes, and bank fraud. For her part, Cotto admitted to attempting, along with her friend and codefendant Isaias Soler, to conceal Soler's role in the murder of Raphael Garcia, another friend, by persuading Amelia Perreira to identify her boyfriend, David Perez, as Garcia's murderer.
 
 
 3
 On the night of August 22, 1998, Cotto was socializing at a Bridgeport, Connecticut nightclub with Garcia and two other women. In the early morning hours of August 23, the four of them left the nightclub in a car leased to Cotto. Another car, parked so as to block the street, forced Cotto's car to a halt. According to Cotto, Garcia began yelling for the women to run from the car while he reached for a gun. The women ran from the vehicle while Soler, later identified as the driver of the blocking car, fired several shots at Garcia, killing him.
 
 
 4
 Upon arriving at the scene, the police questioned Cotto and the other two women, all of whom denied knowing the identity of the shooter (although Cotto later admitted that she knew Soler was the shooter at the time of the shooting). The police also searched Cotto's vehicle for evidence, finding two plastic bags of marijuana and a loaded Raven .25 caliber pistol with an altered serial number, concealed in a green make-up case placed in the center console. Cotto admitted that the make-up case was hers.[2]
 
 
 5
 Thereafter, codefendants Soler and Frank Estrada agreed to frame someone for the murder of Garcia. On September 17, 1998, Cotto joined this conspiracy. According to Cotto, Amelia Perreira asked Cotto to set up a meeting with Soler to obtain bail money for Perez, who had been arrested that day on drug-related charges. Cotto brought Perreira to meet Soler and, together with Soler, attempted to persuade Perreira to assist the conspirators in disseminating the story that Perez had killed Garcia.
 
 
 6
 Cotto pleaded guilty to one count of conspiracy to obstruct justice, and the district court sentenced her on April 29, 2002.[3] The district court found that Cotto's applicable Guidelines range was 87 to 108 months, but her term of imprisonment was limited to the statutory maximum of sixty months. See 18 U.S.C. § 371; U.S.S.G. § 5G1.1(a). The only contested issue at sentencing was Cotto's motion for a downward departure pursuant to U.S.S.G. § 5K2.12. Cotto argued that a departure was warranted because she had feared for her and her family's safety, had she refused to cooperate with Soler's attempt to frame Perez for Garcia's murder. Cotto based her fear not on any explicit or implicit threat from Soler, but on her knowledge of Soler's criminal conduct and her first-hand knowledge of Soler's murder of Garcia. Cotto also claimed that her fear increased when she learned, in January 1999, that a co-worker and her child were killed after the child had witnessed a murder. The government countered that (1) any fear Cotto may have felt as a result of witnessing Garcia's murder could not, as a matter of law, constitute serious coercion or duress justifying a departure under § 5K2.12, and (2) Cotto could not have been under serious coercion or duress at the time of her meeting with Soler and Perreira because she voluntarily associated with Soler both before and after the Garcia shooting.
 
 
 7
 The district court granted the departure, reasoning that Cotto's relationship with Soler "cuts both ways":
 
 
 8
 It suggests perhaps that you wouldn't have been intimidated by him, wouldn't have been coerced or felt duress, a threat from him. On the other hand, knowledge of someone who is frequently engaged in criminal activity and who has murdered someone in your presence ... can emphasize the fear that one might feel toward an individual like that ....
 
 
 9
 Finding that Soler's murder of Garcia caused Cotto "to feel severe duress and perceive an imminent threat to [her] personal safety or that of [her] family," the district court departed from the sixty-month statutory maximum and imposed a sentence of twenty-four months' incarceration.
 
 DISCUSSION
 
 10
 On appeal, the government argues that the district court erred by interpreting "serious coercion" to include Cotto's perception, based solely on her knowledge of Soler's criminal history, that Soler might harm her or her family if she refused to participate in the conspiracy to obstruct the investigation of Garcia's murder. We agree.
 
 
 11
 Prior to April 30, 2003, we reviewed a district court's decision to depart downward for abuse of discretion. See, e.g., United States v. Smith, 331 F.3d 292, 293 (2d Cir.2003). As of April 30, 2003, the effective date of the PROTECT Act, however, Congress now requires that we review de novo whether a downward departure is "justified by the facts of the case." See PROTECT Act § 401 (codified at 18 U.S.C. § 3742(e) (2003)). We have yet to resolve whether this new standard of review applies to appeals pending before April 30, 2003. Because we would find error even under the more deferential abuse of discretion standard, we do not resolve this issue here. Cf. Smith, 331 F.3d at 293 n. 1.
 
 
 12
 A district court may not depart from an applicable Guidelines range absent "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b), quoted in U.S.S.G. § 5K2.0. Thus, a downward departure is not warranted unless a circumstance of the offense renders it outside the heartland of the offenses covered by the guideline range. Koon v. United States, 518 U.S. 81, 93-96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The defendant bears the burden of proving that he or she is entitled to a downward departure. See, e.g., United States v. Silleg, 311 F.3d 557, 564 (2d Cir.2002).
 
 
 13
 Section 5K2.12 of the Guidelines permits a district court to depart downward from an applicable Guidelines range "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." U.S.S.G. § 5K2.12. The Guidelines also provide, however, that duress is a discouraged basis for departure because it is "not ordinarily relevant [to] whether a sentence should be outside the applicable guideline range." Id. § 5H1.3 & pt. H intro. cmt. Thus, duress must be present to an "exceptional degree" to warrant a downward departure. Koon, 518 U.S. at 93-96, 116 S.Ct. 2035. Accordingly, § 5K2.12 provides that "[o]rdinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party ...." U.S.S.G. § 5K2.12. As the Eighth Circuit has noted, "[a]bsent these specific serious threats, coercion ... must be present in some unusual or exceptional way to warrant departure from the Guidelines range." United States v. King, 280 F.3d 886, 890 (8th Cir.2002).
 
 
 14
 "The court is not confined to the classical definition of duress" when considering a departure under § 5K2.12. United States v. Smith, 987 F.2d 888, 891 (2d Cir.1993) (quoting United States v. Johnson, 956 F.2d 894, 898 (9th Cir.1992)). "If section 5K2.12 is to be accorded meaningful status, as the Sentencing Commission obviously intended, we must read it as providing a broader standard of coercion as a sentencing factor than coercion as required to prove a complete defense at trial." United States v. Cheape, 889 F.2d 477, 480 (3d Cir.1989). Thus, although the affirmative defense of duress requires a well-founded fear of imminent bodily harm with no opportunity to escape, United States v. Stevens, 985 F.2d 1175, 1181-82 (2d Cir.1993), § 5K2.12 requires only a more general "threat of physical injury" or "substantial damage to property," and thus reflects a broader conception of coercion than does the affirmative defense.
 
 
 15
 Nevertheless, the same logic that animates the defense also animates § 5K2.12. See United States v. Pinto, 48 F.3d 384, 389 (9th Cir.1995) (noting that "discussion of the elements of perfect duress [is] not irrelevant to the issue of imperfect duress" under § 5K2.12); United States v. Amparo, 961 F.2d 288, 292 (1st Cir.1992) ("[T]he type and kind of evidence necessary to support a downward departure premised on duress is somewhat less than that necessary to support a defense of duress at trial."). Both the Guidelines and the defense require "an objective showing that a reasonable person would have been coerced" under the particular circumstances of the defendant's case. Smith, 987 F.2d at 890 (describing standard for duress defense); accord United States v. Sachdev, 279 F.3d 25, 29 (1st Cir.2002) (requiring district court considering a departure to "objectively determine whether a reasonable person in defendant's position would perceive there to be a threat").[4] The defendant must also show that the coercion caused her to commit the offense. See U.S.S.G. § 5K2.12 (requiring defendant to commit offense "because of serious coercion ... or duress" to warrant departure (emphasis added)); United States v. Amor, 24 F.3d 432, 439 (2d Cir.1994) (finding that there must be a "causal nexus" between the coercion and the charged offense); see also United States v. Gallegos, 129 F.3d 1140, 1145 (10th Cir.1997) (stating that defendant's fear of alleged coercing party after commission of offense does not warrant departure). With these considerations in mind, we turn to Cotto's claimed bases for departure.
 
 
 16
 Cotto concedes that Soler did not directly threaten her, her family or her property if she did not assist in obstructing the Garcia murder investigation. She claims, instead, that she perceived a threat of harm because (1) she was aware of Soler's criminal background; and (2) she had witnessed Soler murdering Garcia. Cotto also claims that her fear of Soler arose from her awareness that her co-worker and her co-worker's child, a government witness in a murder case, were murdered.[5] In essence, Cotto claimed she was afraid of Soler because of what she knew of his extensive criminal activity.
 
 
 17
 We hold that the coercion occasioned by a defendant's generalized fear of a third party, based solely on knowledge of that third party's violent conduct toward others rather than on any explicit or implicit threat, is insufficient to constitute the unusual or exceptional circumstances warranting a departure under § 5K2.12. To hold otherwise would vitiate the Guidelines' requirement that the coercion be somehow unusual or more severe than that implicit in ordinary criminal associations, and would reward defendants who associate freely with violent criminals for the mere fact of that association. See United States v. Collazo, 798 F.Supp. 513, 518 (N.D.Ind.1992) (finding if speculative fear of reprisal justified § 5K2.12 departure for perjury conviction, "any perjury defendant who lied about drug dealers" would be equally entitled to the departure).
 
 
 18
 The insufficiency of a defendant's generalized fear based on an associate's criminal history to establish exceptional coercion is illustrated by the facts of this case. Despite Cotto's knowledge of Soler's criminal history, she voluntarily continued to associate with him, and does not assert that extricating herself from the relationship would have been difficult or impossible. Perreira, not Soler, sought the meeting at which Soler and Cotto attempted to persuade her to frame Perez, and Cotto not only agreed to the meeting, but sought Soler out herself. See United States v. Zagari, 111 F.3d 307, 330 (2d Cir.1997) (affirming district court's refusal to grant departure, in absence of specific threat, stating that "in light of [the defendant's] close dealings with [organized crime] ... hardly have we ever known anyone who was so willingly duressed") (internal quotations and alterations omitted). Even if Garcia's murder gave Cotto a more concrete idea of Soler's criminal capabilities, in the absence of any evidence that the murder was related to Garcia's refusal to follow a directive by Soler, the connection between the murder and Cotto's offense is simply too attenuated to have the coercive effect required by § 5K2.12. Because Cotto was never forced to do anything or threatened with harm if she did not comply with Soler's wishes, and was not in possession of information that suggested that merely refusing to associate with Soler would cause him to harm her, her understandable fear in dealing with someone capable of great violence does not amount to exceptional coercion.
 
 
 19
 We need not reach the question of whether there are circumstances in which a defendant could demonstrate that he or she was subject to "extraordinary" influence that rises "to a level of coercion which the guidelines might countenance," even in the absence of a specific explicit or implicit threat. Gallegos, 129 F.3d at 1145. A pattern of unlawful activity directed at the defendant by an alleged coercing party might, in some cases, obviate the need for a specific threat. "Fear which would be irrational in one set of circumstances may be well-grounded if the experience of the defendant with those applying the threat is such that the defendant can reasonably anticipate being harmed on failure to comply." Johnson, 956 F.2d at 898-903 (remanding for reconsideration of sentences where district court refused to grant § 5K2.12 departure and there was evidence of severe, repeated violence toward defendants);[6] United States v. Gaviria, 804 F.Supp. 476, 479-80 (E.D.N.Y.1992) (granting departure in light of evidence of serious physical and emotional abuse by father, husband and others, and defendant's husband instigated defendant's criminal conduct).[7]
 
 
 20
 Perhaps even a pattern of unlawful activity directed toward others, and not the defendant, could create the exceptional circumstances necessary for a downward departure if the defendant could show that a reasonable person in the defendant's position would perceive that pattern of unlawful activity as a threat to herself or himself. Had Soler been known regularly to punish disloyalty by associates, Cotto might have had reason to believe that not participating in the obstruction conspiracy could have led him to harm her or her family. Cf. Johnson, 956 F.2d at 901-02 (remanding for reconsideration of a § 5K2.12 departure where defendant "had seen `how [the coercing party] did other people,'" and where defendant's husband had been beaten and threatened with death for attempting to remove the defendant from the gang's control).
 
 
 21
 We need not decide these questions here, however, for this case presents no such facts. Cotto failed to produce any evidence, other than her own unsworn and conclusory statement, indicating that Soler would have harmed her, or even threatened to harm her, had she refused to join the obstruction conspiracy. Her generalized fear is not so exceptional or unusual as to remove her conduct from the heartland of cases contemplated by the Guidelines. Accordingly, under any applicable standard of review, the district court erred in granting the departure.
 
 CONCLUSION
 
 22
 For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED for resentencing in a manner consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 The Honorable Fred I. Parker, who was a member of this panel, died following argument, and the appeal is being decided by the remaining two members of the panel, who are in agreementSee 2d Cir. R. § 0.14(b).
 
 
 [1]
 All references to the Sentencing Guidelines in this opinion are to the November 1, 2001 version applied by the district court
 
 
 [2]
 Cotto was convicted of possession of a firearm with an altered serial number. She was sentenced to three months' imprisonment and three years' supervised release on May 28, 1999
 
 
 [3]
 Soler was charged in the same indictment with murder in aid of racketeering
 
 
 [4]
 The Ninth Circuit has stated that a "purely subjective element" may be taken into account in deciding to depart downwardJohnson, 956 F.2d at 898. The court based this conclusion on a portion of § 5K2.12, which states that "[t]he extent of the decrease ordinarily should depend on the reasonableness of the conduct and on the extent to which the defendant's actions would have been less harmful under the circumstances as the defendant believed them to be." Id. (quoting U.S.S.G. § 5K2.12). This interpretation appears to us incorrect. By its terms, this part of § 5K2.12 applies only to the question of how far to depart, not to the initial question of whether to depart at all.
 
 
 [5]
 Cotto cannot rely on her knowledge of the January 1999 murders of her co-worker and the co-worker's child to establish her reasonable perception of coercion. Even if there were evidence that Soler was involved in these murders, they occurred months after Cotto's offense, and thus could not have contributed to the fear that allegedly caused her to help cover up Soler's crimeSee Gallegos, 129 F.3d at 1145; Amor, 24 F.3d at 439.
 
 
 [6]
 InJohnson, evidence that this defendant had been suffering from battered women's syndrome had been presented at trial to establish the affirmative defense of duress, and the Ninth Circuit then considered that evidence in the context of sentencing. As noted above, see supra note 5, we disagree with Johnson's holding that the defendant's subjective perception may be taken into account in considering a downward departure under § 5K2.12. Although Johnson. suggests that the sentencing court may consider a defendant's particular susceptibility to coercion, such as that engendered by battered women's syndrome, in determining whether the defendant was subject to exceptional coercion, we note only that considering the circumstances of the defendant's association with the coercive parties, and the reasonableness of the defendant's fear in light of those circumstances, is not inconsistent with the objective standard by which the fear should be measured. Fear that is unreasonable or disproportionate in some situations may become quite reasonable in light of a history of abuse directed at the defendant.
 
 
 [7]
 Gaviria, like Johnson, involved evidence used as part of a duress defense at trial and resubmitted during sentencing. We note that, in the absence of a duress defense at trial, an evidentiary hearing during sentencing may be necessary to develop similar grounds for departure. The decision to hold an evidentiary hearing during sentencing, however, remains in the sound discretion of the district court. Zagari, 111 F.3d at 330 (noting that sentencing courts enjoy "broad discretion on the decision of whether an evidentiary hearing is necessary").