**UNITED STATES COURT OF APPEALS**

**April 16, 2008**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUAN MANUEL ROJAS-
HERNANDEZ,

Respondent-Appellant.

No. 07-2024

District of New Mexico

(D.C. No. 05-CR-2458-013-JC)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON** and **McCONNELL**, Circuit Judges.

Appellant Juan Manuel Rojas-Hernandez pleaded guilty to one count of an

indictment charging him with conspiracy to possess with intent to distribute more

than one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i),

and 846. He was sentenced to serve a term of 168 months' imprisonment, the

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is
therefore submitted without oral argument. This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

bottom of his advisory range under the United States Sentencing Guidelines. He appeals that sentence as substantively unreasonable. We affirm.

## I. BACKGROUND

Mr. Rojas-Hernandez was named in four counts of a sixteen-count, fifteen-defendant superseding indictment brought against the members of a large heroin trafficking organization that operated in and around Albuquerque, New Mexico, until the DEA took it down on November 15, 2005. The indictment was the result of a months-long investigation by local and federal authorities, including a wiretap that intercepted over four thousand pertinent telephone calls.

Mr. Rojas-Hernandez, who had illegally immigrated to the United States from Mexico, began his association with the conspiracy as a street-level courier. In time his higher-ups promoted him to the mid-level position of dispatcher:

> Seven days a week, between about 7:00 a.m. and 7:30 or 8:00 p.m., a dispatcher would answer [his] cell phone and take the orders [for heroin]. The dispatcher would direct the customer to a known location—usually the parking lot of an easily identifiable legitimate business, such as fast food restaurants, grocery stores, car washes, etc.—and give the customer an estimate of how long it would take for the delivery to be made. The dispatcher would then call the street level courier assigned to that route and tell the courier which customers were waiting at which locations. The dispatchers often instructed the couriers which addicts were considered good credit risks and directed the couriers not to sell to addicts who had failed to pay in the past. The dispatchers would also make decisions whether the couriers should accept particular trade goods for heroin instead of cash.

R., Vol. II, PSR ¶ 51, at 11–12. We largely assume the parties' familiarity with the remaining facts of the case.

On August 7, 2006, pursuant to a plea agreement with the government, Mr. Rojas-Hernandez entered a plea of guilty to Count 1 of the indictment, the charge of conspiracy to possess with intent to distribute more than one kilogram of heroin. His forty-page Presentence Investigation Report (PSR) explained in substantial detail the nature of the conspiracy, its structure and methods of operation, and the scope of Mr. Rojas-Hernandez's involvement. It accounted him responsible, over the course of the conspiracy, for the distribution of between 10 and 30 kilograms of heroin. For purposes of the United States Sentencing Guidelines, the PSR therefore computed his base offense level at 36, *see* U.S.S.G. § 2D1.1(c)(2) (2005), applied a two-point enhancement for his role in the offense as an organizer, leader, manager, or supervisor, *see id.* § 3B1.1(c), and reduced this by three points to recognize his acceptance of responsibility, *see id.* § 3E1.1(a), (b), for a total Offense Level of 35. The absence of any criminal background meant that Mr. Rojas-Hernandez's Criminal History Category was I, and his resultant advisory sentencing range was 168–210 months.

Mr. Rojas-Hernandez did not object to any of the PSR's factual allegations or Guidelines calculations. At a sentencing hearing his counsel discussed a few of his redeeming qualities, such as his law-abiding past, his allegedly minor role in the conspiracy, and the claim that Mr. Rojas-Hernandez had turned to crime

only to be able to pay for medical treatment for his daughter's hepatitis. Counsel did not, however, request any specific sentence or argue for a variance from the Guidelines range. The district court imposed the bottom term of 168 months, and Mr. Rojas-Hernandez timely appealed. He does not challenge the district court's factual findings or the calculation of his Guidelines range, but asserts that his sentence is unreasonably high in light of the factors prescribed for sentencing by 18 U.S.C. § 3553(a).

## II. DISCUSSION

### A. Waiver and Forfeiture

The government urges that, without reaching the merits, we should consider the claim now presented to have been waived or forfeited below. Although they are often confused or conflated, waiver and forfeiture of error are distinct doctrines: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *accord, e.g.*, *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th. Cir. 2007); *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006). Waiver affirmatively bars a party from appealing on the relinquished claim, while forfeiture generally means he may have relief only for plain error. *Carrasco-Salazar*, 494 F.3d at 1272; *Teague*, 443 F.3d at 1314–15. Because Mr. Rojas-Hernandez made no objection to his PSR, and never

-4-

specifically requested a sentence below his Guidelines range, the government contends that he waived his right to appeal the sentence he received, or at least that his appeal should be subject to review for plain error only.

In *United States v. Mancera-Perez*, 505 F.3d 1054, 1058 (10th Cir. 2007), we held that a defendant who "not only failed to object *after* the district court pronounced his sentence, but failed, even before sentencing, to offer *any* argument whatsoever for a lower sentence and, indeed, agreed with the district court that the length of the sentence imposed was reasonable," thereby waived his right to appeal the reasonableness of the sentence. The government argues that the same rule should apply in this case because Mr. Rojas-Hernandez did not object after sentencing or argue beforehand for a below-Guidelines sentence. We disagree. The decisive factor in *Mancera-Perez*—as in any true waiver case—was affirmative acquiescence or agreement, neither of which was present here.

Retrenching, the government urges alternatively that we should deem this sentencing claim forfeited and review it for plain error. The government acknowledges that in *United States v. Torres-Duenas*, 461 F.3d 1178, 1182–83 (10th Cir. 2006), a case where the defendant "did not specifically object to the reasonableness of his sentence in the district court," we held that "when the claim is merely that the sentence is unreasonably long, we do not require the defendant to object in order to preserve the issue." On its face, *Torres-Duenas* would thus seem to squeeze out forfeiture altogether: whether or not the defendant objects,

his claim receives full review; unless he affirmatively acquiesced in the sentence, in which case the claim is barred altogether.  But in *Mancera-Perez* we "clarif[ied] *Torres-Duenas*'s exception" to the ordinary forfeiture rules:  the defendant can benefit from it only if he "at least made the argument for a lower sentence before the district court."  505 F.3d at 1059.

Mr. Rojas-Hernandez contends that, if any such argument is necessary, he *did* make an argument for a lower sentence at his sentencing hearing by highlighting his minimal role in the conspiracy and the fact that he had turned to crime only to get money to pay for his daughter's medical care.  We need not, and do not, decide whether "an argument for a lower sentence" must be an argument for a sentence below the Guidelines.  Nor do we decide whether merely stressing a defendant's mitigating facts, when one does not know what kind of sentence the court is contemplating, is truly "an argument for a low*er* sentence" than he receives, sufficient to preserve the claim, or whether it is just an argument for a low*ish* sentence, which is satisfied when he is sentenced at the bottom of the Guidelines.  In this case, we would affirm whether or not plain error applied, and will for argument's sake review Mr. Rojas-Hernandez's claim on the reasonableness standard to which he claims to be entitled.

## B.  Standard of Review

A sentence must be "sufficient, but not greater than necessary," to comply with a set of sentencing considerations laid out by Congress in 18 U.S.C. §

-6-

3553(a), including "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and the defendant's Guidelines range.

Our review "will, of course, take into account the totality of the circumstances." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). However, because Mr. Rojas-Hernandez was sentenced within the Guidelines, his sentence is presumptively reasonable. *United States v. Angel-Guzman*, 506 F.3d 1007, 1012 (10th Cir. 2007); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam). The presumption is rebuttable, but "appellate 'reasonableness' review merely asks whether the trial court abused its discretion." *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007). That level of appellate review implies a "substantial deference to district courts." *United States v. Smart*, 518 F.3d 800, 806 (10th Cir. 2008).

## C. Analysis

Mr. Rojas-Hernandez presents four reasons to think the district court abused its discretion in this case: his character in Mexico was good, his motives in crime were high-minded, his role in the offense was minimal, and his co-defendants received lower sentences than he did. We are unpersuaded.

The record reveals no more about Mr. Rojas-Hernandez's character than that he was never before convicted of a crime, and was gainfully employed as a sugar-cane cutter in Mexico. (His only profession since arriving in the United States has been of the illegal variety.) But legitimate employment, while commendable, is not remarkable in the least, and the lack of a criminal past is already accounted for under the Guidelines through the calculation of the defendant's Criminal History Category; the district court does not abuse its discretion by giving it no more consideration than that. The argument that a below-Guidelines sentence was mandated because Mr. Rojas-Hernandez was engaged in crime to pay for medical care for his daughter likewise fails. A great many defendants have turned to crime because of poverty or to support themselves and their loved ones, so Mr. Rojas-Hernandez's case cannot be distinguished on this basis from "the mine run of cases" in which a Guidelines sentence will be reasonable. *Rita*, 127 S. Ct. at 2465.

The argument that Mr. Rojas-Hernandez played only a very minor role in this conspiracy is also unavailing. The PSR extensively outlined the scope of his role in the organization, including his "promotion" from street-level courier to the safer job of dispatcher. Mr. Rojas-Hernandez did not object to the two-point Guidelines enhancement applicable to a defendant who "was an organizer, leader, manager, or supervisor" in criminal activity, U.S.S.G. § 3B1.1(c), or to the PSR's description, reprinted above, of the supervisory and decisionmaking

responsibilities of a heroin "dispatcher." These realities are inconsistent with his claim of minor-participant status, and the district court was entitled to rely on them at sentencing. Similarly, Mr. Rojas-Hernandez argues that, although he may have arranged drug transactions, he never handled drugs or money. But when he was searched by police during a traffic stop on August 11, 2005, he had $975 in his pocket—a hefty sum for one who has no legitimate employment and claims to be impoverished.

Mr. Rojas-Hernandez argues strenuously that his sentence was unreasonable because he was punished more severely than other, allegedly more culpable members of his conspiracy. "[I]t is inconceivable," he says, "that Mr. Rojas-Hernandez received a sentence which was four years longer than the leader of the drug trafficking organization," Juan Cruz-Mora. Aplt's Br. 15. As the government rightly points out, however, the record of this case contains an insufficient basis for reviewing this claim. We can conclude from the findings in Mr. Rojas-Hernandez's PSR that Mr. Cruz-Mora's role and involvement were more substantial, but we know nothing about Mr. Cruz-Mora's "history and characteristics," 18 U.S.C. § 3553(a)(1), about what it would take "to protect the public from further crimes of" Mr. Cruz-Mora, *id.* § 3553(a)(2)(C), about whether he rendered "substantial assistance in the prosecution" of other offenders, U.S.S.G. § 5K1.1, or any of the numerous other things that might have made a lower sentence reasonable for him.

More importantly, this argument fails as a matter of law. Although § 3553(a)(6) requires the district court to sentence in light of "the need to avoid unwarranted sentence disparities," we have repeatedly held that this "requires a judge to take into account only disparities *nationwide* among defendants with similar records and Guideline calculations." *United States v. Verdin-Garcia*, 516 F.3d 884, 899 (10th Cir. 2008) (citing *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006); *United States v. Gallegos*, 129 F.3d 1140, 1143 (10th Cir. 1997)). The Supreme Court's opinion in *Gall*, 128 S. Ct. at 599–600, suggests that a court may be within its discretion to go further and consider the possibility of unwarranted disparities (or even unwarranted similarities, *cf. Verdin-Garcia*, 516 F.3d at 899) among co-defendants. But the court surely acts within its discretion when it declines to do so and adheres to the text of § 3553(a). Therefore, absent a showing that Mr. Rojas-Hernandez's 168-month sentence was unreasonably higher than the sentences of others in his shoes across the nation, he may not have relief on this basis. No such showing has been made.

### III. CONCLUSION

The judgment of the United States District Court for the District of New Mexico is **AFFIRMED**.

Entered for the Court,

Michael W. McConnell
Circuit Judge

-10-